FILED

IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2009 MAY 15  P 1:38

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| WESTWIND ACQUISITION CO., LLC, <br> 2711 Centerville Road <br> Suite 120, PMB 6802 <br> Wilmington, Delaware 19808 <br><br> and <br><br> MONROE, LLC <br> 2711 Centerville Road, Suite 400 <br> Wilmington, Delaware 19808 <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSAL WEATHER AND <br> AVIATION, INC., <br> 8787 Tallyho Road <br> Houston, Texas 77061 <br><br> Registered Agent for Service of Process: <br><br> National Registered Agents, Inc. <br> 16055 Space Center Blvd, Suite 235 <br> Houston, Texas 77062 <br><br> Defendant. | Case No. 1:09CV551-TSE/TRJ |

Plaintiffs Westwind Acquisition Co., LLC and Monroe, LLC, by counsel, for their Complaint against Defendant Universal Weather and Aviation, Inc., allege as follows:

**PARTIES**

1.  Plaintiff Westwind Acquisition Co., LLC ("Westwind") is a Delaware limited liability company. Westwind's single member, William Conway, is a citizen of the Commonwealth of Virginia. Westwind owns an Israeli Aircraft Industries Gulfstream Model

G200 aircraft, Serial Number 107 and Federal Aviation Administration ("FAA") Registration Number N707BC (the "Westwind Aircraft") that is the subject of this litigation.

2. Plaintiff Monroe, LLC ("Monroe") is a Delaware limited liability company. Monroe's single member, the Buccini/Pollin Group, Inc., is a citizen of the State of Delaware and the District of Columbia. Monroe owns a British Aerospace Model BAE 125, Series 800 A aircraft, Serial Number NA0454 and FAA Registration Number N180EG (the "Monroe Aircraft") that is the subject of this litigation.

3. Upon information and belief, Defendant Universal Weather and Aviation, Inc. ("Universal Weather") is a corporation incorporated under the laws of Texas with its principal place of business in Houston, Texas. Universal Weather provides credit card services that enable its customers to purchase fuel, maintenance, and other aircraft-related fees. Universal Weather has placed a lien on each of the aircraft that are the subject of this litigation.

## JURISDICTION AND VENUE

4. Plaintiffs incorporate paragraphs 1-3 of this Complaint as if fully set forth herein.

5. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 and declaratory judgment is sought pursuant to 28 U.S.C. § 2201. This action is between citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. This court has personal jurisdiction over Defendant pursuant to Virginia Code Section 8.01-328.1. Upon information and belief, the Defendant has regularly transacted business in the Commonwealth, contracted to supply services or things in the Commonwealth, and caused tortious injury by acts or omissions in the Commonwealth.

7. Venue is proper in this Court under 28 U.S.C. §§ 1391(a) because a substantial part of the events and omissions material to Plaintiffs' causes of action occurred in this District, and the property that is the subject of the action is located in this District.

## FACTS COMMON TO ALL COUNTS

### Background on the Westwind Aircraft

8. Plaintiff Westwind is the lawful and titled owner of the Westwind Aircraft.

9. Upon information and belief, William Conway, the sole member of Plaintiff Westwind, entered into a contract with International Jet Management ("IJM") in 2008, in which IJM agreed to provide aircraft management services for the Westwind Aircraft. The original signed contract between Conway and IJM has been lost. However, Exhibit A, attached to this Complaint, represents a true and correct copy of the contract between Conway and IJM, with personal and confidential information redacted.

10. Under the contract with Conway, IJM was to arrange for, among other things, "fueling, lubricant services, and all other consumables of the [Westwind] Aircraft at the Operating Base and, if required, at other locations." Exhibit A at Section 3.1(c).

11. Defendant Universal Weather provides support services for flight operations worldwide. The service that Defendant provided to IJM, and out of which this litigation arises, was the supply of credit cards that could be used by IJM personnel to buy fuel and other aviation related goods and services.

12. As early as the late 1990s, IJM and Defendant entered into a contract in which Defendant contracted to provide credit cards to IJM personnel for use at airports around the world. IJM personnel would then use these credit cards to purchase fuel and other aviation related goods and services from outside vendors for the Westwind Aircraft.

13. At no time were Conway and Defendant, or Westwind and Defendant, in privity of contract; rather, Conway entered into a contract with IJM for management of the Westwind Aircraft, and IJM in turn entered into a contract with Defendant for the credit cards to be used by IJM personnel.

14. Prior to the imposition of the lien, neither Plaintiff Westwind nor its sole member, William Conway, had ever communicated with Defendant regarding the Westwind Aircraft or any other matter.

### Background on the Monroe Aircraft

15. Monroe is the lawful and titled owner of the Monroe Aircraft.

16. On or about July 24, 2007, the Buccini Pollin Group, Inc., ("Buccini Pollin") the sole member of Plaintiff Monroe, entered into a contract with IJM, in which IJM agreed to provide aircraft management services for the Monroe Aircraft. A true and correct copy of the contract is attached to this Complaint as Exhibit B, with personal and confidential information redacted.

17. Under the contract with Buccini Pollin, IJM was to arrange for inspections, maintenance, repairs, servicing, and upgrades of the Monroe Aircraft. Exhibit B at Section 4.2.

18. Defendant provided credit cards to IJM personnel to buy fuel and other aviation related goods and services from outside providers for the Monroe Aircraft.

19. At no time were Buccini Pollin and Defendant, or Monroe and Defendant, in privity of contract; rather, Buccini Pollin entered into a contract with IJM for management of the Monroe Aircraft, and IJM in turn entered into a contract with Defendant for the credit cards that were used to purchase fuel and other items.

20. Prior to the imposition of the lien, neither Plaintiff Monroe nor its sole member, Buccini Pollin, had ever communicated with Defendant regarding the Monroe Aircraft or any other matter.

### The Two Liens

21. Pursuant to their respective contracts with IJM, Westwind and Monroe were billed by IJM for Universal Weather credit card charges incurred by IJM personnel for the Westwind Aircraft and the Monroe Aircraft. Westwind and Monroe, in turn, have paid in full all monies due to IJM for Universal Weather credit card charges.

22. Based upon information and belief, in or around July 2008, IJM stopped paying Defendant Universal Weather for certain fees incurred by IJM personnel in regard to the Westwind Aircraft and the Monroe Aircraft. Upon information and belief, IJM has since become insolvent.

23. In an attempt to recoup the money owed it by IJM, Defendant Universal Weather asserted a lien against the Westwind Aircraft – owned by Plaintiff Westwind, *not* by IJM – with the FAA for "storage, fuel, repairs and/or maintenance provided by [Universal Weather] under a contract with International Jet Management, Inc." A true and correct copy of the lien placed on the Westwind Aircraft is attached as Exhibit C.

24. Defendants also asserted a lien against the Monroe Aircraft – owned by Plaintiff Monroe, *not* by IJM – with the FAA for "storage, fuel, repairs and/or maintenance provided by [Universal Weather] under a contract with International Jet Management, Inc." A true and correct copy of the lien placed on the Monroe Aircraft is attached as Exhibit D.

25. These liens were asserted pursuant to the Texas Property Code, which states in pertinent part:

> A person who stores, fuels, repairs, or performs maintenance work on an aircraft has a lien on the aircraft for:
>
> (1) the amount due under a contract for the storage, fuel, repairs, or maintenance work; or
> (2) if no amount is specified by contract, the reasonable and usual compensation for the storage, fuel, repairs, or maintenance work.

Tex. Prop. Code Ann. § 70.301(a).

26. At no time did Defendant ever store, fuel, repair, or perform maintenance work on either the Westwind Aircraft or the Monroe Aircraft. Defendant solely provided financing in the form of credit cards to IJM for the purchase of fuel from third party vendors.

## The Unpaid Invoices

27. As noted, Westwind and Monroe have paid *in full* all invoices billed to them by IJM for charges related to IJM's management of the Westwind Aircraft and the Monroe Aircraft.

28. Upon information and belief, IJM has not paid Defendant Universal Weather for certain credit card charges incurred by IJM during its management of the Westwind Aircraft and the Monroe Aircraft.

29. Upon information and belief, about 60% of the unpaid invoices owed to Defendant by IJM, which allegedly comprise the lien on the Westwind Aircraft asserted by Defendant, were for fuel charges. The remaining 40% of the unpaid invoices owed to Defendant by IJM were for items such as catering, crew transportation, planning management, and landing, handling and parking fees.

30. Upon information and belief, 26.8% of the dollar value of the fuel purchases giving rise to the lien on the Westwind Aircraft, and 33.3% of the total transactions giving rise to this lien, occurred in the Commonwealth of Virginia. This percentage of dollar value and number of transactions in Virginia exceeds the next highest state in which unpaid purchase transactions allegedly occurred for the Westwind Aircraft. More significantly, none of the

6

unpaid transactions giving rise to the lien on the Westwind Aircraft occurred in the State of Texas.

31. Upon information and belief, about 92% of the unpaid invoices owed to Defendant by IJM, which allegedly comprise the liens on the Monroe Aircraft asserted by Defendant, were for fuel charges. The remaining 8% of the unpaid invoices owed by IJM to Defendant were for other items such as catering, crew transportation, planning management, and landing, handling and parking fees.

32. Upon information and belief, 60.75% of the dollar value of the fuel purchases giving rise to the lien on the Monroe Aircraft, and 58% of the total transactions giving rise to this lien, occurred in the Commonwealth of Virginia. This percentage of dollar value and number of transactions in Virginia far exceeds the next highest state in which unpaid purchase transactions allegedly occurred for the Aircraft. Only two unpaid transactions giving rise to the lien occurred in the State of Texas, or 4% of the fuel transactions.

33. The invoices that IJM has not paid specify the name and the supplier of fuel, none of which is Defendant Universal Weather. Defendant only provides the credit cards used to purchase fuel, not the fuel itself.

## CAUSES OF ACTION

### COUNT ONE
### DECLARATORY JUDGMENT – INVALIDITY OF LIENS

34. Plaintiffs incorporate by reference paragraphs 1 through 33 in their entirety as if fully set forth herein.

35. The most significant contacts and transactions allegedly giving rise to the liens filed by Defendant Universal Weather against the Westwind and Monroe Aircraft occurred in the Commonwealth of Virginia, where 34 out of approximately 65 allegedly unpaid fuel transactions

occurred; only 2 of 65 occurred in the State of Texas. More significantly, both the Westwind and Monroe Aircraft were hangared at Dulles Airport in Loudoun County, Virginia, during the time period covering the invoices at issue.

36. Liens on aircraft must be filed where the transactions giving rise to the lien occurred.

37. The lien laws of the Commonwealth of Virginia, not the State of Texas, apply to the liens on the two aircraft, because: 1) the majority of allegedly unpaid fuel purchases occurred in Virginia; 2) the two aircraft at issue were hangared in Virginia during the relevant time period; and 3) the choice of law provisions in both of IJM's contracts with Westwind and Monroe dictate that the laws of Virginia govern those contracts. *See* Exhibit A at Section 12.1 and Exhibit B at Section 11.11.

38. The relevant Virginia Code provisions regarding the placement of liens on aircraft do not provide for liens for fuel. *See* Va. Code Ann. §§ 43-32 and 43-34.1. Thus, a lien on an aircraft for unpaid fuel would be invalid in Virginia.

39. In addition, the relevant Virginia Code provisions regarding the placement of liens on aircraft only allow a lien to be placed by the "keeper" of an aircraft. *Id.* Defendant solely provided financing for aircraft related services. Thus, a lien placed on the aircraft by Defendant would be invalid in Virginia.

40. The Texas Code provision cited to in the two liens only applies in instances when an entity fuels an aircraft. *See* Tex. Prop. Code Ann. § 70.301(a). Defendant Universal Weather financed the purchase of fuel, but did not actually fuel the aircraft; thus, the liens are invalid under Texas law because Defendant did not fuel the aircraft.

41. Finally, some of invoice charges that IJM has not paid were for items other than fuel, such as catering, crew transportation, planning management, and landing, handling and parking fees. The Texas Code provision cited to in the liens only provides for a lien for storage, repairs, maintenance work, or for an entity that fuels an aircraft. Thus, the liens are invalid because they include items that are not covered by the Texas Code provision cited in the liens.

42. The parties' dispute with respect to whether the liens placed by Defendant on the Westwind and Monroe Aircraft presents an actual controversy within the meaning of 28 U.S.C. § 2201.

43. A judgment of this Court will serve a useful purpose in clarifying and settling the legal relations at issue in this case.

44. A judgment of this Court in this case will determine, terminate, and afford relief of the uncertainty, insecurity, and controversy giving rise to this action.

45. In order to resolve this controversy, Plaintiffs request that, pursuant to 28 U.S.C. § 2201, this Court declare:

   a) that the laws of the Commonwealth of Virginia are applicable to the liens filed by Defendant Universal Weather, attached hereto as Exhibits C and D; and

   b) that the liens placed by Defendant Universal Weather upon Plaintiffs' aircraft in the State of Texas and filed before the FAA and attached as Exhibits C and D are invalid, null, and void.

## COUNT TWO
## TRESPASS TO CHATTELS

46. Plaintiffs incorporate paragraphs 1 through 45 in their entirety as if fully set forth therein.

47. Under Virginia common law and the Restatement (Second) of Torts, a trespass to chattels occurs when a party intentionally uses or intermeddles with the personal property of another without authorization from the owner of the property.

48. Through the imposition of improper and invalid liens, Defendant has intentionally interfered with the Westwind Aircraft and the Monroe Aircraft without the authorization of their respective owners, Westwind and Monroe.

49. These invalid liens have resulted in a loss to Plaintiffs Westwind and Monroe of time and money due to this litigation to remove the liens, and a loss of value of the two aircraft.

50. Plaintiffs Westwind and Monroe have suffered damages in an amount to be proven as a result of this trespass.

## COUNT THREE
## CONVERSION

51. Plaintiffs incorporate paragraphs 1 through 50 in their entirety as if fully set forth therein.

52. Under Virginia common law and the Restatement (Second) of Torts, property is converted when dominion is exerted over the property that is in denial of or inconsistent with the owner's rights.

53. Defendant unlawfully converted the Westwind Aircraft and the Monroe Aircraft when Defendant asserted improper liens over the aircraft.

54. Plaintiffs Westwind and Monroe have suffered damages in an amount to be proven as a result of this conversion.

## COUNT FOUR
## SLANDER OF TITLE

55. Plaintiffs incorporate paragraphs 1 through 55 in their entirety as if fully set forth therein.

56. Under Virginia common law, a slander of title occurs when a party publishes a false statement, with gross indifference or reckless disregard to the truth of the statement, that brings into question or disparages the title to property.

57. In filing the liens against the Westwind Aircraft and the Monroe Aircraft, Defendant acted with gross indifference and reckless disregard to the invalidity of the liens, and as a result disparaged the titles to the two aircraft.

58. Plaintiffs Westwind and Monroe have suffered special damages in an amount to be proven as a result of this slander of title.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Westwind Acquisition Co., LLC, and Monroe, LLC request judgment in their favor against Defendant Universal Weather and respectfully request the following relief from the Court:

1. judgment against Defendant on all counts of this Complaint.

2. that the Court issue the above declaration sought;

3. that the Court direct the FAA and Defendant to remove the liens attached hereto as Exhibits C and D;

4. that the Court award Plaintiffs reasonable attorneys' fees, costs, and expenses incurred to enforce their rights to their aircraft and to prosecute this action in this Court and on appeal, if necessary, under Tex. Prop. Code Ann. § 70.306; and

5. that the Court award Plaintiffs all other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

                        Westwind Acquisition Co., LLC
                        Monroe, LLC
                        PLAINTIFFS
                        BY COUNSEL

Dated: May 15, 2009            Respectfully submitted,
       Washington, D.C.

                        _____
                        Timothy J. Lynes (VSB No. 31836)
                        Mandie E. Landry (VSB No. 71183)
                        KATTEN MUCHIN ROSENMAN LLP
                        2900 K Street, N.W.
                        Suite 200
                        Washington, D.C. 20007
                        Phone: (202) 625-3686
                        Fax:   (202) 298-7570
                        Timothy.Lynes@kattenlaw.com
                        Mandie.Landry@kattenlaw.com
                        *Counsel for Plaintiffs Westwind Acquisition, Co., LLC and Monroe, LLC*