**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| WESTWIND ACQUISITION CO., LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MONROE, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09cv551 |
| | ) | TSE/TRJ |
| v. | ) | |
| | ) | |
| UNIVERSAL WEATHER AND | ) | |
| AVIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

KATTEN MUCHIN ROSENMAN LLP

Timothy J. Lynes (VSB No. 31836)
Mandie E. Landry (VSB No. 71183)

2900 K Street, N.W., Suite 200
Washington, D.C. 20007
Phone: (202) 625-3686
Fax:     (202) 298-7570
Email: Timothy.Lynes@kattenlaw.com
           Mandie.Landry@kattenlaw.com

*Counsel for Plaintiffs*
*Westwind Acquisition, Co., LLC, and*
*Monroe, LLC*

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. iii

I.      INTRODUCTION ........................................................................................................... 2

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 4

III.    ARGUMENT ................................................................................................................... 9

        A.      Standard of Review ............................................................................................... 9

        B.      Summary Judgment Should Be Granted in Plaintiffs' Favor Because the
                Liens Are Invalid Under Texas Law .................................................................... 10

                1)      The Liens Are Invalid Because the Texas Property Code Does Not
                        Allow an Entity that Merely Provides Financing for Aircraft-
                        Related Products and Services to Place a Lien on an Aircraft ...................... 10

                2)      The Liens Are Invalid Because the Texas Code Provision at Issue
                        Does Not Have Extraterritorial Application to Conduct that Occurs
                        Outside of Texas. ........................................................................................ 14

        C.      Summary Judgment Should Be Granted in Plaintiffs' Favor Because the
                Liens Violate Virginia Public Policy. .................................................................. 18

        D.      Defendant's Quantum Meruit Claim Fails as a Matter of Law Because
                Plaintiffs Were Not Involved with IJM's Contract with Defendant and
                Plaintiffs Do Not Owe Any Money for Services Rendered ...................................... 21

IV.     REQUEST FOR ATTORNEY'S FEES ........................................................................... 23

V.      CONCLUSION ............................................................................................................... 24

INDEX OF EXHIBITS

## Table of Authorities

**CASES**

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)................................................................................................9

*Beale v. Hardy*,
    769 F.2d 213 (4th Cir. 1985) ...............................................................................10

*BMW of N. America, Inc. v. Gore*,
    517 U.S. 559 (1996)..............................................................................................14

*Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*,
    481 U.S. 454 (1987)..............................................................................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................9

*C.I.T. Corp. v. Guy*,
    195 S.E. 659 (Va. 1938).................................................................................19, 20

*City of Rockwall v. Hughes*,
    246 S.W.3d 621 (Tex. 2008)................................................................................11

*Coca-Cola Co. v. Harmar Bottling Co.*,
    218 S.W.3d 671 (Tex. 2006)....................................................................15, 16, 17

*De Leon v. Saint Joseph Hosp., Inc.*,
    871 F.2d 1229 (4th Cir. 1989) ...............................................................................9

*Dodson v. Bunton*,
    17 S.W. 507 (Tex. 1891).......................................................................................11

*Dreher v. Budget Rent-A-Car Sys., Inc.*,
    634 S.E.2d 324 (Va. 2006)....................................................................................19

*Ex parte Roloff*,
    510 S.W.2d 913 (Tex. 1974).................................................................................12

*Fitzgerald v. Advanced Spine Fixation Sys., Inc.*,
    996 S.W.2d 864 (Tex. 1999).................................................................................12

*Huntington v. Attrill*,
    146 U.S. 657 (1892)..............................................................................................15

*In re Estate of Nash*,
    220 S.W.3d 914 (Tex. 2007).................................................................................11

*Marmon v. Mustang Aviation, Inc.*,
    430 S.W.2d 182 (Tex. 1968)..................................................................................15, 16, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...............................................................................................9

*McIntyre v. Ramirez*,
    109 S.W.3d 741 (Tex. 2003)..................................................................................13

*Peary v. Goss*,
    365 F. Supp. 2d 713 (E.D. Va. 2005) ......................................................................9

*Texas Water Comm'n v. Brushy Creek Mun. Util. District*,
    917 S.W.2d 19 (Tex. 1996).....................................................................................11

*Travelers Indem. Co. v. Miller Bldg. Corp.*,
    221 Fed. Appx. 265 (4th Cir. 2007)........................................................................10

*Willard v. Aetna Cas. and Sur. Co.*,
    193 S.E.2d 776 (Va. 1973).....................................................................................19


**STATE STATUTES**

Declaratory Judgment Act, 28 U.S.C.A. § 2201 .........................................................10

*Relating to Imposing Liens on Aircraft for Nonpayment of Fuel Charge*s, Texas
    Legislative Session 77(R) (2001) (statement of Representative Burnam, Member,
    Texas House Committee on Business and Industry) ...............................................13

Texas Property Code § 70.301(a) .................................................................... Passim

Texas Property Code § 70.306.....................................................................................23

Texas Free Enterprise and Antitrust Act of 1983 .......................................................15

Texas House Bill 3081 (2001) .....................................................................................13

Va. Code Ann. § 43-32 .................................................................................................20

Va. Code Ann. § 43-34.1 ..............................................................................................20

Va. Code Ann. § 8.01-266 ............................................................................................24

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| WESTWIND ACQUISITION CO., LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MONROE, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09cv551 |
| | ) | TSE/TRJ |
| v. | ) | |
| | ) | |
| UNIVERSAL WEATHER AND | ) | |
| AVIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Westwind Acquisition Co., LLC and Monroe, LLC (collectively, "Plaintiffs"),

by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56

and Local Rule 56, submit this Memorandum in Support of their Motion for Partial Summary

Judgment with respect to Count One of Plaintiffs' Complaint (Declaratory Judgment – Invalidity

of Liens) and Count One of Defendant's Counterclaim (Determination and Foreclosure of

Liens).   Because no genuine issue of material fact remains, Plaintiffs request that the Court

declare that the liens placed on the two aircraft are invalid, that the Court direct the Defendant to

remove the two liens filed with the Federal Aviation Administration ("FAA"), and that Plaintiffs

be awarded any attorney's fees incurred to remove the liens.   Plaintiffs also move for summary

judgment on Count Two of Defendant's Counterclaim (Quantum Meruit).   Plaintiffs are entitled

to summary judgment with regard to Defendant's quantum meruit claim because no question of

fact exists regarding whether Plaintiffs owed International Jet Management ("IJM") any money. Plaintiffs do not, and as such Defendant's claim for quantum meruit must likewise fail.   In further support thereof, Plaintiffs state as follows:

## I.   INTRODUCTION

This matter is ripe for summary judgment.  Defendant Universal Weather and Aviation, Inc. ("Defendant") placed improper liens on two aircraft owned by Plaintiffs, and located in Virginia, pursuant to Texas Property Code Section 70.301(a).  As this Memorandum will show, the liens are invalid because the Texas Code provision at issue does not apply when an entity, such as Defendant, merely provides credit card financing for fuel, repairs, maintenance, or other aviation-related products and services.  Furthermore, the Texas Code provision does not have any application outside of Texas, and application of this Texas provision to Plaintiffs' aircraft would violate Virginia public policy.

Defendant provides financing by way of credit cards for the purchase of aviation-related services from third party vendors.  Defendant is currently owed money by IJM, the former manager of Plaintiffs' aircraft, who is not a party to this litigation.  IJM is insolvent and is on the verge of bankruptcy.  IJM, through credit card financing provided by Defendant, purchased fuel and other aviation-related services from third party vendors in mid-2008 for the operation of Plaintiffs' aircraft, according to the respective management contracts for the aircraft executed between IJM and Plaintiffs.  When IJM failed to pay Defendant's invoices for the credit card financing, Defendant placed liens on Plaintiffs' aircraft in November 2008, ostensibly for the unpaid credit card charges.  Over 99% of these charges occurred outside of Texas.

The liens on the aircraft were improperly filed pursuant to Texas Property Code Section 70.301(a) because this statute only applies when an entity actually stores, fuels, repairs or

performs maintenance work on an aircraft. Defendant's contract with IJM plainly states that it merely financed the purchase of fuel and aviation-related services. Defendant admits that it did not actually provide any fuel for Plaintiffs' aircraft. Defendant has never been in possession of or in physical contact with Plaintiffs' aircraft. Moreover, of the $240,544.03 total credit card charges Defendant seeks to collect, only $205,785.75 of this total is for fuel.[1] *See* Westwind Demonstrative Exhibit for Defendant's Invoices, attached hereto as Exhibit 1; Monroe Demonstrative Exhibit for Defendant's Invoices, attached hereto as Exhibit 2. The balance of $34,758.28 is for various aviation-related services from third party vendors, but are not for aircraft storage, repair or maintenance, as would be required by Section 70.301(a), if it applied.

The liens are also invalid because they were placed on two aircraft hangared in Virginia, not Texas, and the aircraft were not even in Texas when over 99% of the services were purchased by IJM with credit cards issued by Defendant. The Texas Code provision at issue simply does not apply to activity without a direct nexus to Texas. Application of the Texas Code provision to Plaintiffs' aircraft, hangared in Virginia, would also violate Virginia public policy. The Virginia Code provisions that provide for non-consensual aircraft liens for various types of unpaid aviation-related services do not provide for liens for the financing of the purchase of aviation-related products and services Defendant seeks to collect.

Finally, Plaintiffs do not owe Defendant any money for allegedly unpaid aviation-related products and/or services, as is alleged in Count Two of Defendant's Counterclaim. Both Plaintiffs have satisfied their accounts with IJM in full, and do not owe any money for products

---

[1] The amount claimed in Defendant's liens equals $253,217.54, of which $169,880.41 relates to the Monroe Aircraft and $83,337.13 relates to the Westwind Aircraft. However, the total of all of Defendant Universal's invoices received with respect to the Westwind Aircraft only equals $70,663.62. This disparity suggests that Defendant's lien on the Westwind Aircraft is for an amount in excess of what Defendant could conceivably be entitled to, assuming the liens are otherwise legitimate.

and/or services they allegedly received for the benefit of their aircraft.  It would therefore be unjust to make Plaintiffs "pay twice."  Furthermore, Plaintiffs did not themselves request that Defendant provide them with products and services, nor did Defendant ever communicate to Plaintiffs directly that they were to pay Defendant for any products or services.  Defendant's quantum meruit claim thus has no factual or legal basis.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Relationship Between the Two Aircraft and International Jet Management

1.    Plaintiff Westwind owns an Israeli Aircraft Industries Gulfstream Model G200 aircraft, bearing serial number 107 and Federal Aviation Administration ("FAA") registration number N707BC (the "Westwind Aircraft") that is the subject of this litigation.  Affidavit of William Conway ("Conway Aff.") at ¶ 4, attached hereto as Exhibit 3.

2.    The Westwind Aircraft was hangared at Dulles Airport in Loudoun County, Virginia, during the time period relevant to this litigation.  Conway Aff. at ¶ 4.

3.    In 2008, William Conway ("Conway"), the sole managing member of Plaintiff Westwind, entered into a management contract with IJM, in which IJM agreed to provide aircraft management services for the Westwind Aircraft.  *Id*. at ¶¶ 3, 5.

4.    Under the contract with Conway, IJM was to arrange for, among other things, "fueling, lubricant services, and all other consumables of the [Westwind] Aircraft at the Operating Base and, if required, at other locations."  Aircraft Pilot and Management Agreement between William Conway and IJM, attached hereto as Exhibit 4, Plaintiffs' Bates Nos. PCUWA 1039-1049 (hereinafter, the "Conway Management Agreement"), at Section 3.1(c); Conway Aff. at ¶ 5.

5.    The Conway Management Agreement for the Westwind Aircraft included a requirement that IJM keep the aircraft free of all liens.  Conway Management Agreement at ¶ 10.1.

6.   Plaintiff Monroe owns a British Aerospace Model BAE 125, Series 800 A aircraft, serial number NA0454 and FAA registration number N180EG (the "Monroe Aircraft") that is the subject of this litigation.   Affidavit of David Pollin ("Pollin Aff.") at ¶ 4, attached hereto as Exhibit 5.

7.   The Monroe Aircraft was hangared at Dulles Airport in Loudoun County, Virginia, during the time period relevant to this litigation.   Pollin Aff. at ¶ 4.

8.   In 2007, the Buccini Pollin Group, Inc. ("Buccini Pollin"), the sole member of Plaintiff Monroe, entered into a contract with IJM, in which IJM was to arrange for management services for the Monroe Aircraft.   *Id*. at ¶ 5.

9.   Under the contract with Buccini Pollin, IJM was to arrange for inspections, maintenance, repairs, servicing, and upgrades of the Monroe Aircraft.   Aircraft Joint-Use and Management Agreement between Buccini Pollin and IJM, attached hereto as Exhibit 6, Plaintiffs' Bates Nos. PCUWA 1050-1068 (hereinafter, the "Monroe Management Agreement"), at Section 4.2; Pollin Aff. at ¶ 5.

10.  At no time did either Plaintiff ever request products or services directly from Defendant. Conway Aff. at ¶ 9; Pollin Aff. at ¶ 9.

11.  At no time did either Plaintiff ever expect to pay Defendant directly for any products or services.   Conway Aff. at ¶ 10; Pollin Aff. at ¶ 10.

12.  On or about October 1, 2008, IJM began to experience financial difficulties.   Conway Aff. at ¶ 6; Pollin Aff. at ¶6.

13.  Due to IJM's financial difficulties, and Westwind's fear that IJM was no longer paying its debts when due and that IJM would not be able to continue providing management services in

accordance with the management contract, Westwind terminated its contract with IJM in accordance with its terms in or around October 2008.  Conway Aff. at ¶ 6.

14.  Due to IJM's financial difficulties, and Monroe's fear that IJM was not longer paying its debts when due and that IJM would not be able to continue providing management services in accordance with the management contract, Monroe terminated its contract with IJM in accordance with its terms in or around October 2008.  Pollin Aff. at ¶ 6.

15.  IJM ceased performing aircraft management services for the Westwind Aircraft and the Monroe Aircraft on or around October 1, 2008.  Conway Aff. at ¶ 7; Pollin Aff. at ¶ 7.

16.  Both Plaintiffs have paid or been credited by IJM for all amounts due and owing to IJM under their respective management agreements with IJM, including any and all amounts that were charged by IJM to the UVair charge cards provided by Defendant for items and services rendered in connection with Plaintiffs' aircraft.   Affidavit of Mark Beesley ("Beesley Aff.") attached hereto as Exhibit 7, at ¶ 12.

**B.        Relationship Between IJM and Defendant Universal Weather**

17.  On or around April 17, 2001, IJM, pursuant to an Application for UVair Fueling Card, applied for and obtained from Defendant certain UVair Fueling Cards ("UVair Cards") to be used by IJM personnel in compliance with the UVair Cardholder Agreement.  Defendant's First Amended Responses ("Def. Resp."), at ¶ 7, attached hereto as Exhibit 8; Application for UVair Card ("Application"), Defendant's Bates Nos. 0002-0005, attached hereto as Exhibit 9; Beesley Aff. at ¶ 9.

18.  The Application for UVair Fueling Card and the accompanying UVair Cardholder Agreement constitute the only contract between IJM and Defendant.  Def. Resp. at page 5, ¶ 7 and page 9, ¶ 4.

19.  The UVair Cards function as credit cards, allowing the user to purchase "fuel and other related services for such aircraft."  Application at 0004, ¶ 1.

20.  IJM personnel used the UVair Cards to purchase aviation-related goods and services from independent third party vendors for the Westwind Aircraft and the Monroe Aircraft. Beesley Aff. at ¶ 9.

21.  Pursuant to its contract with Defendant as stated in the Application for the UVair Cards, IJM was to "pay and reimburse Universal for all charges for fuel and any other services or products obtained or paid for through the use of the UVair Card . . . Universal will invoice [IJM] upon receipt."  Application at 0004, ¶ 3.

22.  Pursuant to their respective management contracts with IJM, Westwind and Monroe were billed by IJM and paid for UVair Card charges incurred by IJM personnel for the Westwind Aircraft and the Monroe Aircraft.  Beesley Aff. at ¶ 10.

23.  IJM's Application for UVair Cards with Defendant also stated that

> **[A]ll products (including but not limited to fuel) obtained through the use of the UVair Card represent sale transactions occurring directly between [IJM] and the supplier.**  Title to all products involved passes directly from the supplier to [IJM] (title to fuel passing as the fuel passes the fueling flange in the aircraft). **Fees charged by Universal in connection with such transactions are fees for services rendered to [IJM] for arranging the transaction** and providing credit to enable [IJM] to acquire services and products as provided in this Agreement . . . **At no time will Universal . . . purchase, house, take title to or hold any other interest in, or place or continue in commerce, or sell, any fuel or other products or services obtained through the use of the UVair Card.**

Application at 0004, ¶ 4 (emphasis added).

24.  Defendant did not itself ever fuel Plaintiffs' aircraft.  Def. Resp. at Answer ¶ 8.

25.  The total amount of IJM third party vendor credit card charges Defendant seeks to collect in this matter from Plaintiff Westwind is $83,337.13, the amount of the lien.  However, Defendant's invoices for the Westwind Aircraft confirmed as complete by Defendant only total

$70,663.62.   Of this total of $70,663.62, only $49,403.56 is for fuel and the balance of $21,260.06 is for aviation-related services that do not include storage, maintenance or repairs. None of these charges were incurred in Texas.   *See* Westwind Demonstrative Exhibit for Defendant's Invoices, attached as Exhibit 1.

26.  The total amount of IJM third party vendor credit card charges Defendant seeks to collect in this matter from Plaintiff Monroe is $169,880.41.  Of this total, $156,382.19 is for fuel and the balance of $13,498.22 is for aviation-related services that do not include storage, maintenance or repairs.  Only two (2) of these ninety-three (93) charges were incurred in Texas. *See* Monroe Demonstrative Exhibit for Defendant's Invoices, attached as Exhibit 2.

## C.      The Two Liens

27.  On November 7, 2008, Defendant asserted a lien against the Westwind Aircraft, owned by Plaintiff Westwind, with the FAA for "storage, fuel, repairs and/or maintenance provided by [Universal Weather] under a contract with International Jet Management, Inc."  Westwind Lien, attached hereto as Exhibit 10.  The stated amount due on the lien is $83,337.13.  *Id.*

28.  Also on November 7, 2008, Defendant asserted a lien against the Monroe Aircraft, owned by Monroe, with the FAA for "storage, fuel, repairs and/or maintenance provided by [Universal Weather] under a contract with International Jet Management, Inc."  Monroe Lien, attached hereto as Exhibit 11.  The stated amount due on the lien is $169,880.41.  *Id.*

29.  These two liens were asserted pursuant to the Texas Property Code, which states in pertinent part:

> A person who stores, fuels, repairs, or performs maintenance work on an aircraft has a lien on the aircraft for:
>
> (1) the amount due under a contract for the storage, fuel, repairs, or maintenance work; or
>
> (2) if no amount is specified by contract, the reasonable and usual compensation for the storage, fuel, repairs, or maintenance work.

Tex. Prop. Code Ann. § 70.301(a) (hereinafter, "Section 70.301(a)").

30. Defendant has never been in possession of or in physical contact with either the Westwind Aircraft or the Monroe Aircraft. Conway Aff. at ¶ 8; Pollin Aff. at ¶ 8.

### III. ARGUMENT

#### A. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When ruling on a motion for summary judgment, the Court "must assess the evidence offered by both parties and 'determine whether there is a genuine issue for trial' after viewing the evidence in the light most favorable to the non-moving party and resolving all factual disputes in that party's favor." *Peary v. Goss*, 365 F. Supp. 2d 713, 721 (E.D. Va. 2005) (citing *Anderson*, 477 U.S. at 250). A fact is material for purposes of summary judgment if, when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248; *De Leon v. Saint Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 (4th Cir. 1989).

Although the non-moving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the

adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Because no issue of material fact exists here, the Court should grant summary judgment in favor of Plaintiffs and against Defendant on Count One of Plaintiff's Complaint, and Counts One and Two of Defendant's Counterclaim.

Also, in their Complaint, Plaintiffs requested that this Court determine the rights of the respective parties under the Declaratory Judgment Act, which states as follows:

> "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C.A. § 2201.  The Declaratory Judgment Act confers a discretion upon district courts, to confer a judgment that "will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Travelers Indem. Co. v. Miller Bldg. Corp.*, 221 Fed. Appx. 265, 267 (4th Cir. 2007) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)).  As this matter presents the Court with an actual controversy, the Court has the discretion to determine the legal rights of the parties to this matter.

**B.      Summary Judgment Should Be Granted in Plaintiffs' Favor Because the Liens Are Invalid Under Texas Law.**

**1)      The Liens Are Invalid Because the Texas Property Code Does Not Allow an Entity that Merely Provides Financing for Aircraft-Related Products and Services to Place a Lien on an Aircraft.**

The Texas Property Code provides that a lien may be placed on an aircraft by a person who stores, fuels, repairs, or performs maintenance work on an aircraft, as shown by the plain language of the provision:

> (a) A person who stores, fuels, repairs, or performs maintenance work on an aircraft has a lien on the aircraft for:
>
> (1) the amount due under a contract for the storage, fuel, repairs, or maintenance work;  or
>
> (2)  if no amount is specified by contract, the reasonable and usual compensation for the storage, fuel, repairs, or maintenance work.

Tex. Prop. Code § 70.301(a) (emphasis added).  This provision has never been used to enforce a lien by an entity that merely provides financing for fuel, nor has Section 70.301(a) ever been extended to cover financing for items which do not include repair, storage or maintenance, as Defendant attempts to do in this case.

In analyzing a Texas statute, Texas courts have held that the principal goal of statutory interpretation is to give effect to the intent of the legislature.  *See, e.g.*, *Texas Water Comm'n v. Brushy Creek Mun. Util. District*, 917 S.W.2d 19, 21 (Tex. 1996).  In its analysis of a Texas statute, a court should interpret words according to their common meaning, absent an obvious error or absurd result, and should not resort to rules of construction in order to construe the language of a clear and unambiguous statute.  *See, e.g., City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007).  Texas courts have noted this goal of statutory interpretation from very early days:

> When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction.  In such case it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law.

*Dodson v. Bunton*, 17 S.W. 507, 508 (Tex. 1891); *see also Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) (holding that "[u]nless exceptional circumstances dictate

otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete")
(internal citations omitted).  It is assumed that the Texas Legislature "tries to say what it means"
and that the words it chooses are the "surest guide to legislative intent."  *Fitzgerald v. Advanced
Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

   The plain words of Section 70.301(a) state that one who "stores, fuels, repairs, or
performs maintenance work on an aircraft" can place a lien on an aircraft  To argue that these
verbs – "stores, fuels, repairs, or performs" – also refer to "one who provides financing" for
storage, fuel, repairs or maintenance pursuant to the terms of a credit card agreement would
require the insertion of words and meanings into Section 70.301(a) that are simply not there.  A
plain reading of Section 70.301(a) indicates that an entity who "stores, fuels, repairs, or
performs" on an aircraft is one who performs the actual verbs of storing, fueling, repairing, or
performing.  Nowhere does Section 70.301(a) use the word "finance" or anything similar.

   In interpreting a statute, a court should not "look alone to any one phrase, clause or
sentence of the act, but to the entire act itself."  *See Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex.
1974) (citing *Popham v. Patterson*, 51 S.W.2d 680 (Tex. 1932)).  The terms "stores, fuels,
repairs, or performs" all refer to actual physical contact with an aircraft, such as, for example,
storage of the aircraft, fueling of the aircraft, repair of a broken part on the aircraft, or
performance of maintenance work on the aircraft.  None of these terms have ever been applied to
one who provides financing for storage, repairs, or maintenance, but instead have only been
applied to an entity that performs the specific action.  *See, e.g.*, *Astraea Aviation Servs., Inc. v.
Nations Air Inc.*, 172 F.3d 390 (5th Cir. 1999) (applying Section 70.301(a) to a lien for
maintenance and repair work performed on an aircraft).  To argue that these terms should be

applied to one who provides <u>financing</u>[2] for these services, rather than only to one who actually performs the services, would be to ignore the clear meaning of the terms "stores, fuels, repairs or performs" and would result in statutory interpretation contrary to the legislature's intent.

In addition to analyzing the language of a law itself, a court can also consider other matters in determining the Texas Legislature's intent, including the objective of the law and its legislative history. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). In 2001, for example, the Texas Legislature added the term "fuels" to Section 70.301(a), without altering any of the remaining language. In a legislative hearing that same year, testimony was given in support of House Bill 3081, which added the term "fuels" to Section 70.301(a). *Relating to Imposing Liens on Aircraft for Nonpayment of Fuel Charge*s, Texas Legislative Session 77(R) (2001) (statement of Representative Burnam, Member, Texas House Committee on Business and Industry).[3] A transcription of this hearing is attached hereto as Exhibit 12. Mr. Reed Pigman, who testified that he owned a "filling station for airplanes, selling fuel is one of [his] main businesses," was the only person to give testimony to the Texas legislature regarding H.B. 3081. Exhibit 12. Mr. Pigman testified that the addition of "fuel" to this code provision was necessary to allow <u>owners of gas stations</u>, such as himself, to recoup money from a person who fuels an aircraft at his station and then "fly[ies] off without paying." *Id*. This testimony supports the notion that the intent of the Legislature in passing and revising H.B. 3081, as exemplified in this

---

[2]     In fact, IJM's Application for UVair Cards specifically states that "[A]ll products (including but not limited to fuel) obtained through the use of the UVair Card represent sale transactions occurring directly between [IJM] and the supplier . . . At no time will Universal . . . purchase, house, take title to or hold any other interest in, or place or continue in commerce, or sell, any fuel or other products or services obtained through the use of the UVair Card." Stat. of Facts at ¶ 23.

[3]     An audio recording of this hearing can be found at the following website:
        http://www.house.state.tx.us/committees/audio77/040.htm.

2001 revision, was to allow those who actually fuel aircraft, *i.e.*, <u>owners</u> of "filling stations" like Mr. Pigman, to recoup losses for unpaid fuel.

Based on a plain meaning of the language of Section 70.301(a) and testimony given to the Texas legislature, it is clear that this provision only applies to an entity that actually, physically "stores, fuels, repairs, or performs maintenance work on an aircraft."  In the case at bar, Defendant has stated that it was not the entity that actually placed fuel in the two aircraft. *See* Stat. of Facts at ¶ 24.  As such Section 70.301(a) does not give authority to Defendant to file liens for the fuel charges, totaling $205,785.75, it seeks to collect from Plaintiffs.  Furthermore, the other charges Defendant seeks to collect are plainly stated to be for items which do <u>not</u> include storage, repair or maintenance.  *See* Exhibits 1 and 2.  These other charges, totaling $34,758.28, again do not support a lien under Section 70.301(a) of the Texas Property Code.  To apply Section 70.301(a) to a financer of aviation-related services such as Defendant would go beyond the language of the statute, and would infer words and intentions into Section 70.301(a) that simply do not exist.

> **2)      The Liens Are Invalid Because the Texas Code Provision at Issue Does Not Have Extraterritorial Application to Conduct that Occurs Outside of Texas.**

Even if this Court should determine that Section 70.301(a) applies to the financing of fuel or the other aviation-related services identified in Defendant's invoices, this provision still does not have application to activities that occur outside of Texas because the Texas Legislature did not intend for Section 70.301(a) to have extraterritorial application.

An important principle of federalism is that "[n]o State can legislate except with reference to its own jurisdiction."  *BMW of N. America, Inc. v. Gore*, 517 U.S. 559, 571 (1996) (quoting *Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881) (finding that a state, through its award of punitive damages based on activity throughout the United States, may not impose

14

economic sanctions for violations of its laws with the intent of changing lawful conduct in other states)); *Coca-Cola Co. v. Harmar Bottling Co.,* 218 S.W.3d 671, 680 (Tex. 2006). "Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States." *BMW*, 517 U.S. at 571, n.16 (quoting *Huntington v. Attrill*, 146 U.S. 657, 669 (1892)).

The Texas Supreme Court has repeatedly held that "a [Texas] statute will not be given extraterritorial effect by implication but [only] when such intent is clear." *Coca-Cola Co.,* 218 S.W.3d at 682; *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968). "Unless the intention to have a statute operate beyond the limits of the state . . . is clearly expressed or indicated by its language, purpose, subject matter or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territory jurisdiction of the state . . . enacting it, and it is generally so construed." *Coca-Cola*, 218 S.W.3d at 582 n. 33 (citing *Marmon*, 430 S.W.2d at 187). *Coca-Cola* and *Marmon*, two Texas Supreme Court cases, illustrate the limited extraterritorial effect of Texas statutes. Both cases involved Texas plaintiffs seeking remedies pursuant to a Texas statute in a Texas court, and in both cases the Texas Supreme Court ruled that the statutes did not have an extraterritorial effect, and, therefore, could not govern activity outside of Texas.

In *Coca-Cola*, a group of Royal Cola bottlers sued Coca-Cola for violating the Texas Free Enterprise and Antitrust Act of 1983 ("TFEAA"), Texas' equivalent to the federal Sherman Act. 218 S.W.3d at 674. The Royal Cola plaintiffs' collective territory included parts of Texas, as well as area in the surrounding states of Louisiana, Oklahoma and Arkansas. *Id*. at 675. On appeal, Coca-Cola challenged the Texas court's jurisdiction over the plaintiffs' TFEAA claims

based on activity that occurred outside of Texas.  *Id*. at 679-80.  The Texas Supreme Court held that the plaintiff bottlers' claim of extraterritorial injury was not actionable because the TFEAA was not intended to have an extraterritorial effect.  *Id*. at 680-88.  Of particular importance to the Court was the inherent sensitivity of one state extending its laws beyond its borders, and that laws "necessarily reflect fundamental policy choices that the people of one jurisdiction should not impose on the people of another." *Id*. at 680-81. Further, "[o]ne state's legislature cannot dictate to other states what can and cannot be tolerated in economic competition."  *Id*. at 682.  The Court refused to extend the TFEAA to injury that occurred outside of Texas because the TFEAA did not "in clear language" – either by the language of the statute or the legislative history – afford a cause of action for injury outside of the state.  *Id*. at 683.

In *Marmon,* which involved an airplane accident in Colorado, the plaintiffs and defendant were Texas residents, and the case was brought in Texas court.  430 S.W.2d at 183.  The plaintiffs attempted to apply the Texas wrongful death statute to the case, rather than the Colorado wrongful death statute, because the latter had a cap on damages. *Id*. at 184.  At the time of the case, Texas courts applied the doctrine of *lex loci delicti*, meaning that the law of the place of the wrong governed all matters related to the basis of the right of action. *Id*.  In rejecting the plaintiffs' argument that the Texas wrongful death statute should be given extraterritorial effect and apply to a harm that occurred in Colorado, the Texas Supreme Court emphasized that nothing in the language of the statute expressly gave it extraterritorial effect; at most, the statute was silent and therefore the legislative intent was unclear.  *Id*. at 186.  Furthermore, the Texas wrongful death statute had consistently been held by Texas courts not to apply to activities outside of Texas, and the Texas Legislature had not amended the legislation to state otherwise. *Id*. (citing *United States v. South Buffalo Ry*., 333 U.S. 771 (1947)).  According to the Court in

*Marmon*, Texas legislation must follow the general canon that legislative intent be clear in order for legislation to have effect outside the territorial jurisdiction of Texas. *Marmon,* 430 S.W.2d at 187.

Similar to the Texas Legislature's intention not to have the TFEAA and the Texas wrongful death statute apply extraterritorially, as demonstrated respectively in *Coca-Cola* and *Marmon*, the Texas Legislature did not intend for general extraterritorial application of Section 70.301(a).   Except in the limited situation where an individual receives fuel, repair or maintenance work in Texas, or stores an aircraft there, and then subsequently flies his or her aircraft outside of Texas to avoid payment for such services, no colorable argument can be made from the text of the statute or the legislative record that the Texas Legislature intended for any financer of these aviation-related products and services to be able to place a lien on an aircraft for the price of these services, when the services were not rendered in Texas and the aircraft has no connection whatsoever to Texas.

Notably, the express language of Section 70.301(a) is silent as to extraterritorial application. *See* Section II(B)(1), *supra*.  Additionally, the language, purpose, subject matter and history of the legislation in no way indicates that the Texas Legislature intended for the statute to have extraterritorial application beyond the limited situation of an individual buying fuel or otherwise having his/her aircraft stored, repaired, or maintained in Texas, and then flying his or her aircraft outside of Texas without paying for such services.   The legislative history also demonstrates that the Texas Legislature, when it amended the statute to include the provision for fuel services, wanted to provide Texas residents who actually fuel aircraft within Texas, like "filling station" owner Mr. Pigman, with a remedy for when customers "fly off without paying." Exhibit 11.  There is no indication that the legislative intent was to provide any individual who

fuels an aircraft anywhere in the world with the ability to use this particular Texas statute to place a lien on an aircraft.

Most importantly, nothing in the language, purpose, subject matter or history of Section 70.301(a) indicates that the Texas Legislature intended for an individual who provides credit to purchase fuel, storage, repair work or maintenance outside of Texas to be able to place a lien on an aircraft under this provision. At no time did Defendant provide storage, fuel, repair, or maintenance work for Plaintiffs' aircraft. *See* Stat. of Facts at ¶¶ 24-26, 30. Defendant merely provided a credit card to a third party management company so that it could purchase aviation-related services from vendors located outside of Texas. The natural continuation of Defendant's interpretation of the statute would conceivably permit any individual who stores, fuels, or repairs an aircraft, or provides credit to purchase aircraft storage, fuel, or repair work throughout the world, to then place liens on said aircraft via the Texas Property Code, even when there is absolutely no connection whatsoever to Texas.[4] This use conflicts with the clear language of Section 70.301(a) and with the Texas Legislature's intent in passing the statute. Because the statute does not apply to activity outside of Texas, the liens placed on Plaintiffs' aircraft, hangared in Virginia, for activities that occurred outside of Texas, are invalid.

**C.    Summary Judgment Should Be Granted in Plaintiffs' Favor Because the Liens Violate Virginia Public Policy.**

Virginia common law dictates that Virginia courts would not apply Section 70.301(a) of the Texas Property Code to this matter because it is contrary to Virginia public policy. Although a state does not have the authority to legislate outside the boundaries of its respective jurisdiction, states will generally recognize and enforce the laws of sister states pursuant to the

---

[4]    In fact, a large number of the charges ($38,142.76 for the Westwind Aircraft) Defendant seeks to collect were for services rendered abroad. *See* Exhibit 1.

principle of interstate comity.  *See Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 330 (Va. 2006); *Willard v. Aetna Cas. and Sur. Co.*, 193 S.E.2d 776, 778 (Va. 1973); *C.I.T. Corp. v. Guy*, 195 S.E. 659, 662-63 (Va. 1938).  However, under Virginia law, comity does not require the application of another state's substantive law if it is contrary to the public policy of Virginia. *Id.*

In *C.I.T. Corp. v. Guy*, the Virginia Supreme Court refused to enforce a South Carolina lien statute, which gave priority status to the lien on a motor vehicle held by a person injured by such motor vehicle, on the grounds that the South Carolina legislature did not intend for the statute to have an extraterritorial effect, and that interstate comity did not require enforcement of the statute.  195 S.E. at 663.  In *C.I.T. Corp.*, an individual in South Carolina purchased an automobile pursuant to a conditional sales contract; the seller, in turn, properly recorded its interest in the automobile in South Carolina, as required by the applicable South Carolina statute. *Id.* at 660-61  After purchase, the individual drove to Virginia and was involved in an accident with the plaintiff.  *Id.*  The plaintiff, who suffered injuries from the accident, sued the individual in Virginia, and the Virginia trial court ordered the automobile sold, with the proceeds of such sale to pay the damages owed to the plaintiff.  *Id.* The holder of the original South Carolina security interest, C.I.T. Corporation, contested the Virginia trial order on the grounds that it had a recorded interest in the automobile with priority over the lien of the plaintiff.  *Id.*

The Virginia Supreme Court refused to recognize and enforce, under interstate comity, the South Carolina lien statute at issue.  *Id.* at 663.  This statute placed a priority lien on automobiles for the benefit of individuals who suffered damages due to an automobile operated in violation of South Carolina law, or in a negligent or careless fashion.  *Id.*  The Court refused to recognize this South Carolina statute because it "was intended to regulate the running of motor

vehicles in South Carolina" and because the South Carolina legislature had "no intention to give to it extra-territorial effect." *Id*. The Court further stated that "comity does not require the recognition of a statute intended by the legislature of its enactment to be local in its operation." *Id*.

Defendant's attempted use of Section 70.301(a) of the Texas Property Code in Virginia is almost identical to the attempted use of the South Carolina automobile lien statute in *C.I.T. Corp*.; for similar reasons, this Court should refuse to recognize the statute's applicability in Virginia. As discussed previously, *see* Section II(B)(2), the Texas legislature intended to regulate the local storing, fueling, and repairing of aircraft in Texas through Section 70.301(a), and had no intent for the statute to have extraterritorial effect. Because the intent of the statute was to be local in its operation, the principle of comity does not require Virginia to recognize and enforce the statute.

Other public policy concerns demonstrate why the Texas statute should not be enforced in Virginia. Although Virginia law does provide for non-consensual liens on aircraft in certain circumstances, the relevant Virginia Code provisions regarding the placement of non-consensual liens on aircraft do not provide for liens for the financing of aviation-related products and services. *See* Va. Code Ann. §§ 43-32 and 43-34.1 (providing for liens for amounts due from storing, hangaring, towing or recovering aircraft). More importantly, the relevant Virginia Code provisions only allow a lien to be placed by the "keeper" of an aircraft; at no time did Defendant have physical contact or possession of Plaintiffs' aircraft, *see* Stat. of Facts at ¶ 30, and did not in any way act as a "keeper" of the aircraft.

The Virginia legislature and Virginia courts have not demonstrated that Virginia public policy favors protection of entities that merely provide financing for aircraft-related services.

The Virginia legislature clearly indicated when it passed its relevant aircraft liens statutes which parties it wished to protect through the relevant statutory lien statutes: only "keepers" of aircraft, or those who store, hangar, recover or tow aircraft.   Defendant's attempted use of Section 70.301(a) outside of Texas contradicts the statutory non-consensual aircraft lien framework created by the Virginia legislature.   For these public policy reasons, a Virginia court would neither recognize nor enforce the application of Section 70.301(a) of the Texas Property Code to aircraft hangared in Virginia.

**D.**     **Defendant's Quantum Meruit Claim Fails as a Matter of Law Because Plaintiffs Were Not Involved with IJM's Contract with Defendant and Plaintiffs Do Not Owe Any Money for Services Rendered.**

Defendant alleges in Count Two of its Counterclaim (Quantum Meruit) that Plaintiffs owe Defendant money for allegedly unpaid aviation-related products and services.   As discussed previously, Plaintiffs entered into contracts with IJM for the management of their respective aircraft.   *See* Stat. of Facts at ¶¶ 3, 8.   IJM, in turn, entered into a contract with Defendant Universal for UVair credit cards, which were used to pay for aviation-related products and services for Plaintiffs' two aircraft.   *See* Stat. of Facts at ¶¶ 17, 20.   Plaintiffs were not involved in IJM's contract with Defendant; in fact, Plaintiffs never requested products or services from Defendant directly and never expected to pay Defendant directly for any products or services. *See* Stat. of Facts at ¶¶ 10, 11.   Plaintiffs have also paid in full or been credited by IJM for all money owed.   *See* Stat. of Facts at ¶ 16.

Under Virginia law, quantum meruit is an "equitable doctrine" based on the "notion that one who benefits from the labor of another should not be unjustly enriched."   *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992).   To prevail on its quantum meruit claim, Defendant must prove that it 1) conferred a benefit on Plaintiffs; 2)

Plaintiffs knew or appreciated a benefit that was being conferred; and 3) Plaintiffs accepted or retained the benefit under circumstances that render it inequitable for Plaintiffs to retain the benefit without paying for its value. *Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*, No. 1:08cv971, 2009 WL 2596639, at *13 (E.D. Va. Aug. 21, 2009) (citing *T & M Elec. v. Prologis Trust*, Nos. 22011, et al., 2006 WL 1101740, at *2 (Va. Cir. Ct. Apr. 27, 2006)).

Defendant cannot meet this standard. Defendant conferred a benefit (credit card financing) on IJM, not on Plaintiffs. Plaintiffs had no relationship with the credit card financing that Defendants provided to IJM. Finally, Plaintiffs have both paid or been credited for any money owed to IJM for aviation-related services Defendant seeks to collect in this action. *See* Stat. of Facts at ¶ 16. Thus Defendant cannot claim that it would somehow be inequitable for Plaintiffs to retain the "benefit" of the credit card financing. In fact, Defendant was engaged in inequitable conduct by filing liens which are clearly outside the powers granted in Section 70.301(a) of the Texas Property Code and by using these illegal liens in an effort to extort money from Plaintiffs and compel them to pay twice for the services in issue.

In its decision in *Raymond*, the Fourth Circuit discussed a line of North Carolina cases similar to the case at bar, in which two parties contracted for services for the benefit of a third, non-contracting party. 961 F.2d at 491-92 (citing *Vetco Concrete Co. v. Troy Lumber Co*., 124 S.E.2d 905 (N.C. 1962); *Suffolk Lumber Co., Inc. v. White*, 182 S.E.2d 215 (N.C. App. 1971)). The Fourth Circuit highlighted specific language from *Suffolk*, noting that "[i]t is well established where there is a contract between persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract simply because he has received such services or goods." *Id*. (citing *Suffolk*, 182 S.E.2d at 216). This is exactly the case here, where Defendant

and IJM had a contract for the furnishing of services and goods for Plaintiffs' aircraft; likewise, there can be no implied contract simply because Plaintiffs received these services and goods.

Defendant's claim of quantum meruit must fail because Plaintiffs were not unjustly enriched.  Both Plaintiffs paid in full or was credited for all money owed to IJM for services rendered for the benefit of the two aircraft.  In addition, neither Plaintiff was involved with IJM's contract with Defendant, and neither Plaintiff ever requested products or services directly from Defendant or ever expected to pay Defendant directly.  Plaintiffs' aircraft were simply the recipient of services and goods as contracted for between IJM and Defendant, and there is otherwise no relationship between the parties to this suit.  As Defendant cannot meet the standards for relief under quantum meruit, this Court should dismiss Count Two of Defendant's Counterclaim.

## IV. REQUEST FOR ATTORNEYS FEES

In addition to the relief requested above, Plaintiffs also request that attorney's fees be granted should the Court grant Plaintiffs' request for summary judgment.  Section 70.306 of the Texas Property code states that "[t]he court in a suit under this subchapter may award reasonable attorney's fees to the prevailing party."  This suit was brought under this subchapter of the code, due to Defendant's improper placement of liens on Plaintiffs' aircraft.  Further, by placing the two liens on Plaintiffs' aircraft, Defendant chose to avail itself of the jurisdictional reach of the statute.  As noted in Section II(B)(2), the Texas Legislature did not intend for this provision of the Texas Property code to have extraterritorial effect outside of Texas; thus, the liens are improper because the provision does not apply to Plaintiffs' aircraft located in Virginia.  Yet Defendant – a Texas corporation – attempted to avail itself of this Texas law outside of Texas. Section 70.306, the attorney fees provision, therefore should apply to Defendant because

Defendant is a Texas corporation that is subject to the laws of the state of Texas, including the Texas Property Code to which Defendant purposely submitted itself.  The awarding of attorney's fees would align with Virginia public policy, as Virginia law approves of statutory provisions for attorney's fees.  *See, e.g.*, Va. Code Ann. § 8.01-266.  Because Defendant is subject to the laws of Texas, and because Virginia law approves of the granting of statutory attorney's fees, Plaintiffs request that this Court award attorneys fees to Plaintiffs in this matter.

## V.  CONCLUSION

As set forth in detail above, the following material facts are undisputed:

- Plaintiffs entered into contracts with outside party IJM for management of their respective aircraft;

- During the period of time relevant to this litigation, the aircraft were both hangared at Dulles Airport in Loudoun County, Virginia;

- Defendant provided credit card financing to outside party IJM under a contract between Defendant and IJM;

- IJM used Defendant's credit card financing to purchase aviation-related services for Plaintiffs' aircraft from third party vendors outside of Texas;

- Plaintiffs paid IJM and/or were credited by IJM for all amounts charged to Defendant's credit cards for the benefit of Plaintiffs' aircraft; and

- Defendant never stored, fueled, maintained or repaired either aircraft.

For the foregoing reasons, Plaintiffs Westwind Acquisition Co., LLC and Monroe, LLC, by and through counsel, respectfully request that this Court grant their Motion for Partial Summary Judgment on Count One of Plaintiffs' Complaint, and grant summary judgment as a matter of law dismissing Counts One and Two of Defendant's Counterclaim.

Dated: October 5, 2009                          Respectfully submitted,
       Washington, D.C.

                                             /s/
                               Timothy J. Lynes (VSB No. 31836)
                               Mandie E. Landry (VSB No. 71183)
                               KATTEN MUCHIN ROSENMAN LLP
                               2900 K Street, N.W., Suite 200
                               Washington, D.C. 20007
                               Phone: (202) 625-3686
                               Fax:   (202) 298-7570
                               Email: Timothy.Lynes@kattenlaw.com
                                       Mandie.Landry@kattenlaw.com
                               *Counsel for Plaintiffs*
                               *Westwind Acquisition, Co., LLC and*
                               *Monroe, LLC*