**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| WESTWIND ACQUISITION CO., LLC | § | |
| and MONROE, LLC, | § | |
| | § | |
| Plaintiffs/ Counter-Defendants | § | |
| | § | Case. No. 1:09cv551 |
| v. | § | TSE/TRJ |
| | § | |
| UNIVERSAL WEATHER AND | § | |
| AVIATION, INC., | § | |
| | § | |
| Defendant/ Counter-Plaintiff. | § | |

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANT/ COUNTER-
PLAINTIFF'S RESPONSE TO PLAINTIFFS/ COUNTER-DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

ROSS, BANKS, MAY, CRON & CAVIN, P.C.

Arnold G. Polanco (Admitted Pro Haec Vice)
Mark C. Watler (Admitted Pro Haec Vice)
ROSS, BANKS, MAY, CRON & CAVIN, P. C.
2 Riverway, Suite 700
Houston, TX 77056
Phone: (713) 626-1200
Fax: (713) 623-6014
Email:      apolanco@rossbanks.com
            mwatler@rossbanks.com


Cynthia Kaplan Revesman (Of Counsel)
Law Offices of Cynthia Kaplan Revesman, PLC
4020 University Drive, Suite 207
Fairfax, VA 22030
Phone: (70) 383-0154
Fax: (703) 691-0744
Email:      crevesman@revesmanlaw.com

*Counsel for Defendant/ Counter-Plaintiff
Universal Weather and Aviation, Inc.*

# TABLE OF CONTENTS

Table of Authorities     iv

I.     INTRODUCTION     1

II.     MATERIAL FACT ISSUES PRECLUDING SUMMARY JUDGMENT     1

III.     ARGUMENT AND AUTHORITIES     2

    Summary Judgment Standard of Review     2

    A.     GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT UNDER  FED. R. CIV. P. 56     4

    B.     MOVANTS HAVE NOT ESTABLISHED THE RIGHT TO JUDGMENT AS A MATTER OF LAW     5

      1.     Movants have not established as a matter of law the invalidity of the liens at issue in this case under TEX. PROP.  CODE §70.301.     5

        (a)     The summary judgment record shows that by paying in Texas for the fuel in question, Universal may avail itself of the Texas statutory right to file liens against the fueled aircraft.     5

        (b)     No provision of federal or Texas law requires that an aircraft be hangared in Texas for a lien under TEX. PROP. CODE §70.301 to attach in favor of a party who pays in Texas to fuel the aircraft.     12

        (c)     Application of the governing Texas statute is consistent with the Full Faith and Credit clause of the federal constitution, and would not offend Virginia public policy.     12

      2.     An adequate legal basis exists for Universal's *quantum meruit* counterclaim, and it is supported by competent evidence.     15

      3.     No legal basis exists for the award of attorney's fees which Movants seek.     20

        (a)     There is no contractual basis for Movants' request.     20

(b)     Movants' action is not " brought under" the Texas     20
Property Code, but instead, attacks its applicability
to this case.

(c)     Movants have affirmatively pled that the lien validity     21
issue in this case is governed by Virginia law.


PRAYER     24

CERTIFICATE OF SERVICE     25

AFFIDAVIT OF OUIDA CALOWAY, with Exhibits     (Following Memorandum of Authorities)

**Table of Authorities**

<u>Cases</u>

*Aetna Life Ins. Co. v. Dunken*, 266 U. S. 389, 393 (1924)                     12

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)                     3

*American Surety Co. of New York v. Bethlehem Nat. Bank*, 314 U.S. 314 (1941)                     18

*Bassett v. Mills*, 89 Tex. 162, 34 S.W. 93 (Tex. 1896)                     18

*Bradford Elec. Light Co., Inc. v. Clapper*, 286 U.S. 145 (1932)                     12

*Burch v. City of San Antonio*, 518 S.W. 2d 540 (Tex. 1975)                     6

*Campbell v. Northwestern National Life Ins. Co.*, 573 S.W.2d 496 (Tex. 1978)                     16 - 17

*Carroll v. Lanza*, 349 U. S. 408 (1955)                     12

*Celotex Corp. v. Catrett*, 477 U.S. 316 (1986)                     3-4

*C.I.T. Corporation v. Guy*, 195 S.E. 659 (Va. 1938)                     14

*City of Mason v. West Texas Utilities Co.*, 237 S.W.2d 273 (Tex. 1951)                     6

*Colbert v. Dallas Joint Stock Land Bank*, 150 S.W.2d 771, 771 (Tex. 1941)                     17

*Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980)                     3

*Collins v. Blue Cross of Virginia*, 193 S.E.2d 782 (Va. 1973)                     18

*Davidson v. Clearman*, 391 S.W.2d 48, 50 (Tex. 1965)                     17

*Dreher v. Budget Rent-A-Car System, Inc.*, 634 S.E.2d 324 (Va. 2006)                     15

*Duncan Coffee Co. v. Chiles*, 136 S.W.2d 929 (Tex. Civ. App. – Galveston, 1940), <u>no writ</u>
17

*Federal Land Bank v. Joynes*, 18 S.E.2d 917 (Va. 1942)                     18

*Gen. Elec. Credit Corp. v. Advance Petroleum, Inc.*, 660 So. 2d 1139 (Fla. App. –
11
    3rd Dist. 1995)

*Gen. Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946 (5th Cir. 1999)
18

*Haws & Garett Gen. Contractors, Inc., v. Gorbett Brothers Welding Co.*, 480 S.W.2d 607
    17   (Tex. 1972)

*Hawkspere Shipping Co., Inc. v. Intamex*, 330 F.3d 225, 232 (4th Cir. 2003)         3

*Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006)         3

*In re: Holiday Airlines Corp.*, 620 F.2d 731 (9th Cir. 1980)         8 -
9

*Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73-74 (5th Cir. 1987)         21, 23

*Matsushita Elec. Indus. Co., Ltd. Zenith Radio Corp.*, 475 U.S. 574 (1986)         3

*Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732 (7th Cir. 1990)         16

*Missouri State Ins. Co. v. Jones*, 290 U.S. 199 (1933)         21, 22

*Northeast Marine Terminal Co., Inc. v. Int'l. Terminal Operating Co., Inc.*,         6
    432 U.S. 249 (1977)

*O'Connor v. Ortega*, 480 U.S. 709 (1987)         3

*Olmsted v. Olmsted*, 216 U.S. 386 (1910)         13

*Philko Aviation, Inc. v. Shacket*, 462 U.S. (1983)         9

*Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W. 2d 478 (Tex. App. — Dallas 1988)         21, 23

*Smith v. EMC Corp.*, 393 F.3d 590, 597-598 (5th Cir. 2004)         22 - 23

*State Securities Co. v. Aviation Enterprises, Inc.*, 355 F.2d 225 (10th Cir. 1966)         9

*States Resources Corp. v. The Architectural Team, Inc.*, 433 F.3d 73, 80 (1st Cir. 2005)         3

*Texas Nat'l. Bank of Houston v. Aufderhiede*, 235 F. Supp. 599 (E.D. Ark. 1964)         9

*II Deerfield Ltd. Partnership v. Henry Building, Inc.*, 41 S.W.3d 259, 268 (Tex. App. –         18
    San Antonio 2001), <u>rev. den'd.</u>

*U. S. v. Diebold, Inc.*, 369 U.S. 654 (1962)         3

*Vogel v. Veneman*, 276 F.3d 729 (5th Cir. 2002)                                18

*Voris v. Eikel*, 346 U.S. 328 (1953)                                              6

*Vortt Exploration Co., Inc. v. Chevron U.S.A.*, 787 S.W.2d 942, 944 (Tex. 1990)   16

*Willard v. Aetna Casualty and Surety Co.*, 193 S.E. 2d 776 (Va. 1973)             15


### Federal Constitution

U. S. Constitution, Article IV, Section 1, clause 1                               12 - 14

U. S. Constitution, Article VI, clause 2                                          12


### Federal Statutes and Rules

49 U. S. C. §44107                                                                8 -9

49 U. S. C. §44108                                                                8 -9

FED. R. CIV. P. 56                                                                4, 5, 19

### State Statutes

Texas Property Code §70.301                                                       5 - 12,
21

Texas Property Code §70.306                                                       21-
22

Va. Code Ann. §43-32                                                              22

Va. Code Ann. §43-34.1                                                            22

### Other Authorities

68 TEX. JUR. 3d, <u>Subrogation</u> §7 (2003)                                     18

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| WESTWIND ACQUISITION CO., LLC | § | |
| and MONROE, LLC, | § | |
|     Plaintiffs/ Counter-Defendants | § | |
| | § | Case. No. 1:09cv551 |
| v. | § | TSE/TRJ |
| | § | |
| UNIVERSAL WEATHER AND | § | |
| AVIATION, INC., | § | |
|     Defendant/ Counter-Plaintiff. | § | |

_____

<u>**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANT/ COUNTER-PLAINTIFF'S RESPONSE TO PLAINTIFFS/ COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT:

    I.      INTRODUCTION

    Defendant/ Counter-Plaintiff Uninversal Weather and Aviation, Inc. ("Universal") opposes the Motion for Partial Summary Judgment filed by Plaintiffs/Counter-Defendants Westwind Acquisition, LLC, and Monroe, LLC ("Movants") on the following grounds:

    II.      MATERIAL FACT ISSUES PRECLUDING SUMMARY JUDGMENT

    1.   Whether Movants may claim the benefit of the "payments" they allegedly made for the fuel in question (to third-party IJM), where such "payments" were not made by them, but by their sole members (Conway and Buccini Pollin Group Inc., respectively). (Caloway Affid. at pp. 3-4; Beesley Affidavit, Movants Ex. 7, at ¶12).

    2.   Whether Movants' sole members "paid" International Jet Management ("IJM") for fuel in actual cash payments, or by means of credits issued by IJM in lieu of cash payments (Beesley Affidavit, Movants Ex. 7, at ¶12), ; and if so, in what amounts, and whether the

1

transactions from which such credits to Movants' sole members arose bear any factual nexus to the transactions at issue in this case.  (Id.; and Caloway  Affid. at p. 3-4).

3.  Whether the transactional recap in Movants' Exhibit 1 is factually accurate. (Caloway Affid. at p.3).

4.  Whether the aircraft in question could have been fueled without payment having been made (from Texas, by Universal) for such fuel. ( Caloway Affidavit at p. 3).

5.  Whether in providing such payment for the necessary fuel Universal acted as a "person who ... fuels ... an aircraft"  for purposes of TEX. PROP. CODE §70.301. (Caloway Affidavit at p.3).[1]

**_NOTE:_** Universal intends to seek leave to amend its Counterclaim, as may be necessary to adjust the dollar figures alleged in the lien claim, to exclude any dollar amounts for services or products other than fuel.   This amendment would affect only Count One of the Counterclaim, and would not affect Count Two (for *quantum meruit* recovery).

III.      ARGUMENT AND AUTHORITIES

Summary Judgment Standard of Review

Although in modern practice a motion for summary judgment has become a routine filing in many cases, in fact it must meet strict legal standards. Summary judgment for Movants, even the partial summary judgment sought in the instant case, can only be granted if Movants carry the substantial burden imposed by FED. R. CIV. P. 56, establishing  the absence of any genuine

---

[1]It follows from  the discussion of this Texas statute found in Section III B (1) (a) of this Brief that this issue is best characterized as a mixed question of fact and law, since its resolution requires not only a factual examination into the underlying transactions from which the liens arose, but also the interpretation of the Texas statute that best fits its terms and its remedial purposes: expanding lien rights for aircraft lien claimants.

issue of material fact, and entitlement to judgment as a matter of law.  See *O'Connor v. Ortega*, 480 U.S. 709 (1987);  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).   The Supreme Court has held that matters presented in a motion for summary judgment must be construed most favorably to the party opposing it.  *U. S. v. Diebold, Inc*., 369 U. S. 654 (1962).   Numerous precedents from the Fourth Circuit also stand for the same proposition.  See, e.g., *Cole v. Cole,* 633 F.2d 1083 (4th Cir. 1980).  Every reasonable inference should be indulged in favor of Universal as the party opposing summary judgment, with any doubts as to existence of genuine issues of material fact or of the Movants' entitlement to judgment as matter of law to be resolved in favor of Universal as non-movant. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986).   A fact issue is "material" if a reasonable jury could return a verdict for the non-moving party.  See *Holcomb v. Powell*, 433 F.3d 889 (D. C. Cir. 2006); *States Resources Corp. v. The  Architectural Team, Inc.*, 433 F. 3d 73, 80 (1st Cir. 2005);  *Hawkspere Shipping Co., Inc. v. Intamex*, 330 F. 3d 225, 232 (4th Cir. 2003). Since it serves to pre-empt the adjudicative process by which judgment is reserved until parties have presented their evidence in a live proceeding,  subject to cross-examination, summary judgment should be sparingly used.

The Motion for Summary Judgment now under review seeks not only summary judgment on part of Movants' case, but also a defensive summary judgment on the merits of all of Universal's  Counterclaim.[2]  The latter portion of the motion for summary judgment can only be granted if Movants establish that there is not a scintilla of probative evidence supporting every element of the two causes of action Universal has pled in the Counterclaim.  See *Celotex Corp. v. Catrett*, 477 U. S. 316 (1986).  Our Counterclaim includes claims for determination and

---

[2]The Motion seeks defensive summary judgment on Counts One and Two of the Counterclaim.  They are the only counts contained in the Counterclaim.

foreclosure of liens (Count One) and for *quantum meruit* monetary recovery (Count Two).   On

this "defensive" prong of the motion for summary judgment, Movants' legal burden under Rule

56 is just as onerous as on the portion of Movants' motion seeking a judgment for affirmative

relief on Count One of its Complaint. Universal's Counterclaim survives summary judgment if

Movants do not negate every element of the two causes of action pled, or if Universal comes

forward with probative evidence in support of them.  *Celotex Corp. v. Catrett*, supra**.**  The

Affidavit of Ouida Caloway, Universal's Supervisor of Collections,  contains the necessary

evidence to defeat the portion of the motion for summary judgment directed against Universal's

Counterclaim, since it provides competent proof supporting the elements of the two causes of

action pled, raising the existence of triable issues of fact.

> A.    GENUINE ISSUES OF MATERIAL FACT PRECLUDE
>         SUMMARY JUDGMENT UNDER  FED. R. CIV. P. 56

This case presents a mix of disputed and undisputed issues of material fact.  The disputed

issues of material fact must be resolved before any judgment can be signed, making this case

unsuitable for summary disposition. Moreover, the undisputed facts listed in Movants' Brief are

not the only facts necessary to adjudication of Count One of the Complaint[3] and Counts One and

Two of the Counterclaim pled in ths case. Other undisputed material facts in this case, omitted

from Movants' listing, are also relevant to the merits of the parties' opposing contentions, and

accordingly are relevant to the Motion now before the Court:

- •      Universal paid, in cash out of pocket, the sum of $253,217.54, for fuel and

    services for the aircraft in question.  (Caloway Affidavit at p. 2).

---

[3]Movants' Motion does not seek summary judgment on Counts Two (Trespass to
Chattels), Three (Conversion), and Four (Slander of Title) of their Complaint.

4

- Universal made such payments from its offices in Houston, Texas. (Id., at p. 2).

- Universal has not been reimbursed for any of such payments. (Id., at p. 2-3).

- Movants received the benefit of the fuel payments made by Universal. (Id. at p. 2).

Genuine issues of material fact remain in dispute that must be litigated before judgment can be granted on Counts One of the Complaint, and Counts One and Two of the Counterclaim. They are stated in Section II of this Brief. When examined under the black-letter standards of review governing motions for summary judgment, this case manifestly fails to meet the rigorous requirements of Rule 56 for summary disposition – or even partial summary disposition, as Movants seek. The disputed fact issues relate both to the validity of the liens at issue (Count One of the Complaint, and Count One of the Counterclaim); and the right of Universal to recover in *quantum meruit* (as pled in Count Two of the Counterclaim) for the credit-card payments it made for the fuel, of which Movants received the benefit, but for which Universal remains unpaid to date, to its out-of-pocket loss. When reasonable inferences drawn from the summary judgment record are indulged in favor of Universal, as they must, this case is not appropriate for summary judgment, no matter how superficially appealing the contrary position may appear.

B.  MOVANTS HAVE NOT ESTABLISHED THE RIGHT TO JUDGMENT
AS A MATTER OF LAW

    1.  Movants have not established as a matter of law the invalidity of the liens at issue in this case under TEX. PROP. CODE §70.301.

        (a)  The summary judgment record shows that by paying in Texas for the fuel in question, Universal may avail itself of the Texas statutory right to file liens against the fueled aircraft.

The key issues in this case – whether Texas Property Code §70.301 authorizes lien filings

for a party who goes unpaid after paying in Texas for fueling of an aircraft, and whether it applies to such a party paying in Texas for fuelings that physically occur in another state – are issues of first impression.  The present version of the Texas statute reflects a legislative amendment enacted in 2001, by which a person  who "fuels" an aircraft was added to the class of persons eligible for lien status, which had previously included a person " who stores, repairs, or performs maintenance work on an aircraft."  Admittedly, the liens at issue in this case do not arise from storage, repair, or maintenance work performed on an aircraft.   They do arise from fueling the aircraft in question, thus falling within the scope of the 2001 statutory amendment. In the eight years since the present version of the Texas statute has been on the books, no case has made its way through the Texas courts which required appellate decision on whether paying in Texas for fuel satisfies the statutory predicate for lien status, and whether it applies when the physical act of fueling paid for in Texas occurred elsewhere.

Stepping into that jurisprudential void, Movants invite the Court, on summary judgment, to take a parochial, legalistic reading of the statute.  However, an established canon of construction  holds that remedial statutes, such as TEX. PROP. CODE §70.301, are to be liberally construed to effectuate their remedial purpose.   See *Burch v. City of San Antonio*, 518 S.W.2d 540 (Tex. 1975); *City of Mason v. West Texas Utilities Co.*, 237 S.W.2d 273 (Tex. 1951).[4] Hypertechnical interpretations of a remedial statute, as Movants urge in this case with respect to TEX. PROP. CODE §70.301, should be rejected, especially where such a reading cannot be harmonized with the commercial reality the remedial statute addresses– in this

---

[4]In applying the canon of construction that remedial statutes are to be liberally rather than technically interpreted, Texas is in line with the established approach of federal courts. See e.g., *Northeast Marine Terminal Co., Inc. v. Int'l. Teminal Operating Co., Inc.*, 432 U. S. 249 (1977); *Voris v. Eikel*, 346 U.S. 328 (1953).

6

instance, expanding lien remedies for parties who go unpaid for fueling an aircraft, which by its nature is highly mobile, likely to require fueling and servicing in multiple states within a short time.

Universal agrees with Movants that the starting point for statutory construction must be the language of the statute itself.  In this case, the language at issue in §70.301 provides lien rights for a person who "fuels .... an aircraft." As Movants point out in their Brief, the legislative intent was to expand the universe of liens possible under the statute, so that parties who provide fuel but then go unpaid would have a viable remedy that had not been available to them prior to 2001, as illustrated by the plight of Mr. Pigman, the Texas fuel supplier who testified before the Legislative Committee considering the bill. (Movants' Brief at pp. 12-14; and Ex. 12.)  It is axiomatic that judicial interpretation of the statute must take into account not only its literal language, but also the remedial purpose for which the statue was enacted.   In adding "a person who ...fuels an aircraft"  to the class of parties entitled to assert a lien against an aircraft, the Texas Legislature  recognized that a commercial fueling transaction is left incomplete if the fuel provider goes unpaid; hence, the need for an expanded statutory remedy as embodied in §70.301.

Movants, however, seek to give the word "fuel" in the statute its most narrow possible construction, defeating the remedial purpose the Texas Legislature sought to achieve when it placed that word into the statute to expand the lien rights available.  Their Brief exalts semantical parsing over remedial substance, urging that only a party who performs the physical act of injecting fuel into the aircraft is entitled  to assert a lien under the Texas statute – that is "one who performs the actual verbs of storing, fueling, repairing, or performing." (Movants' Brief at p. 12 [emphasis in original]).   Such a hyper-restrictive approach ignores commercial reality.

7

Aviation fueling is often accomplished on a third-party payment basis: that is, paid for by a party who pays the party who "actually performs the verb of fueling," resulting in creditor status for a party other than the party who physically operated the pump that put fuel into the aircraft. Universal exemplifies this real-world commercial fact.  One of its principal lines of business is to provide credit cards on a third-party basis for use by servicing companies in aircraft fueling.  As established Ms. Caloway's affidavit, the transactions in this case from which the liens arose were commercial, not gratuitous.  Regardless of who performs the physical act of injecting fuel into an aircraft, in a commercial transaction, it is not complete without payment being made.  Thus, a credit-card payor situated as Universal is in this case should qualify as a "person who fuels an aircraft" to serve the remedial purposes for which §70.301 was expanded in 2001.

The summary judgment record establishes that such payments occurred in Texas. (Caloway Affid. at p.2).  Movants, however, focus exclusively on the fact that apparently most of the physical acts of fueling the aircraft in question occurred in states outside Texas, in arguing against application of the Texas statue.  Since aircraft are inherently mobile in their operations, such an anachronistic approach would necessitate multiple lien filings by a credit card funder in every state in which a fueling it funded physically occurred– exactly the sort of cumbersome, outmoded practice Congress intended to abolish when it passed 49 U.S. C.§§ 44107 and 44108, authorizing the Federal Aviation Administration to maintain one centralized repository for filing aircraft liens on a nationwide basis. The Ninth Circuit in *In re: Holiday Airlines Corp*., 620 F. 2d 731 (9th Cir. 1980), observed that without this salutary federal statute, title or lien searches on aircraft would have to be conducted – with little hope of accuracy or completeness due to the mobile nature of aircraft --- "in a multitude of State and County recording offices." Id, 734 F.2d

at 734.  The federal statute, while pre-empting state law on matters concerning filing or priorities of aircraft liens,[5] recognizes that state law controls on issues concerning their underlying validity.   This is expressly stated in  49 U.S.C. §44108(c)(1), which provides in pertinent part:

> The validity of a conveyance, lease, or instrument that may be recorded under section 44107 of this title is subject to the laws of the State, the District of Columbia, or the territory or possession of the United States at which the conveyance, lease, or instrument is delivered, regardless of the place at which the subject of the conveyance, lease, or instrument is located or delivered.

The reading of TEX. PROP. CODE §70.301 which we urge — that a party paying in Texas for an aircraft fueling may avail itself of the Texas statutory lien even if the physical act of fueling occurred elsewhere – is consistent with the Congressional establishment of a streamlined, uniform federal registry for aviation liens, which looks to the law of the state where the lien instrument was executed to determine its validity.  Conversely,  the reading of the statute advocated by Movants would undermine this Congressionally-created uniformity, burdening lien claimants who pay in one location for aircraft fuel involving multiple interstate flights with the need to follow the movements of the plane from state to state, and file multiple liens with the FAA arising under a patchwork of state and local laws, all depending on the happenstance of where the aircraft was physically located at the moment fuel was injected into it.  Such a scattershot program would prove unworkable; an actively used aircraft can be expected to make multiple interstate trips requiring many fuelings across state boundaries during a billing cycle.

The summary judgment record shows that at least Movant Westwind was well aware of the possibility that lien claims of the nature presented in this case could arise against its aircraft

---

[5]See, e.g., *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406 (1983); *State Securities Co. v. Aviation Enterprises, Inc.*, 355 F.2d 225 (10th Cir. 1966); *Texas Nat'l. Bank of Houston v. Aufderhiede*, 235 F. Supp. 599 (E. D. Ark. 1964).

if fuel providers went unpaid during its operation.  The service contract executed by Westwind's

sole members with IJM provided that IJM in the course of providing servicing and necessities

for operation of the aircraft, was to keep the aircraft free of liens.[6]  The intervening insolvency of

IJM,[7] resulting in its failure to reimburse Universal for the fuel payments Universal had made for

the aircraft, leaving Universal unpaid for its out-of-pocket losses to date,[8] was the very type of

lien-creating event within the contemplation of the service contract which Movant Westwind's

member entered into with IJM.

Movants also suggest that lack of contractual privity between Universal and Movants'

sole members (who contracted with IJM for services in connection with the two aircraft owned

[separately] by Movants) provides another reason that TEX. PROP. CODE §70.301 should not

apply in this case. As with the issue of the lien status of a party who goes unpaid after paying in

Texas for fueling an aircraft even if physical acts of fueling occurred outside of Texas, this is an

issue of first impression under TEX. PROP. CODE §70.301.  Neither side can cite Texas case

precedents on point to support their contentions, but we submit that the obvious remedial

purpose of the 2001 amendment of section 70.301 is best served by not reading into it a

requirement of contractual privity between fuel payor and aircraft owner, in light of the growing

prevalence of third-party servicing and fueling arrangements throughout the aviation business.

In its express terms, §70.301 does not require contractual privity between lien claimant and

aircraft owner.  This is understandable, since the lien created by the statute is a lien against the

---

[6]See Conway Affidavit (Movants' Ex. 3) and the contract between Conway and IJM (Movants' Ex. 4) at ¶10.1, discussed in Movants' Brief at p. 4, ¶5.

[7]See Beesley Affid. (Movants' Ex. 7) at ¶5.

[8] See Caloway Affid.,at p.2-3).

aircraft itself, as distinguished from an <u>in personam</u> cause of action against its owners or their contractors.[9]

The issue of the validity of the liens filed by Universal with the FAA will determine the outcome of Count One of the Complaint, and Count One of the Counterclaim. Movants' Complaint seeks declaratory judgment invalidating the liens; Universal's Counterclaim seeks a determination of their validity and judicial foreclosure of them. For summary judgment purposes, the crucial facts are that Universal **paid out-of-pocket in Texas** for the fuelings at issue in this case, the aircraft could not have been fueled without payment, Movants received the benefit of the fuelings paid for in Texas by Universal, and Universal remains un-reimbursed to date, to its out-of-pocket actual loss of $253,217.54, exclusive of interest and attorney's fees. (Caloway Affid. at 2-3). Therefore, under the reading of TEX. PROP. CODE §70.301 most consistent with its language and remedial purposes, the liens filed by Universal are valid , since Universal fits the statutory description of a "person ... who fuels .. . an aircraft."

Accordingly, the motion for summary judgment now before the Court must be denied, so that this case can proceed to trial on the merits. We submit that trial is especially important in a case such as this one, since it presents issues of first impression. Trial on paper does not have the same safeguards as trial in the courtroom.

        (b)     No provision of federal or Texas law requires that an aircraft be

---

[9] In *General Elec. Credit Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139 (Fla. App. – 3rd Dist. 1995), summary judgment was affirmed for an aircraft fuel supplier whose lien arose under a Florida law substantially similar to TEX. PROP. CODE §70.301, rejecting the owner's argument that by taking the aircraft out of Florida following the insolvency of the lessee for whom the lien claimant had supplied fuel, the Florida lien was no longer valid. While this Florida case is not binding precedent for this Court, it does provide a helpful analysis of the interstate reach of an aircraft lien arising under a state's law, regardless of lack of privity between lien claimant and aircraft owner.

hangared in Texas for a lien under TEX. PROPERTY CODE §70.301 to attach in favor of a party who pays in Texas to fuel the aircraft.

(c)     Application of the governing Texas statute is consistent with the Full Faith and Credit clause of the federal constitution, and would not offend Virginia public policy.

Movants contend that application of TEX. PROP. CODE §70.301 to this case would violate comity and the public policy of Virginia, in that some provisions of the Texas statute differ from comparable provisions of the Virginia statutes concerning involuntary aircraft liens. (Movants Br. at pp. 18-21.)  However, established Supreme Court jurisprudence construing the Full Faith and Credit clause [10] compels the conclusion that the Texas statute should apply in this case since its subject matter was well within the legislative power of the Texas Legislature. Contrary contentions based on any perceived Virginia principle of comity, or Virginia public policy, must yield by virtue of the Supremacy Clause of the federal constitution.[11]

The Supreme Court has repeatedly held that the "public Acts" of one state to which another state is Constitutionally bound to give "Full Faith and Credit" include statutes enacted by a state.  E. g., *Carroll v. Lanza*, 349 U. S. 408 (1955); *Bradford Elec. Light Co., Inc. v. Clapper*, 286 U.S. 145 (1932); *Aetna Life Ins. Co. v. Dunken*, 266 U. S. 389, 393 (1924).  The only limitation applicable to this general rule of Constitutional jurisprudence is in a situation in which
 the state statute in question exceeded the legislative jurisdiction of the enacting state.  See, e.g., *Olmsted v. Olmsted*, 216 U.S. 386 (1910) (New York court need not apply Michigan statute

---

[10] "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."  U.S. Constitution, Article IV, Section 1, clause 1.

[11]U.S. Constitution, Article VI (clause 2).

which would have affected the transmission of land by probated will in New York after the fact).

In the case at bar, no contention has been made – indeed, no serious contention **could** be made –

that the Texas Legislature lacked the power in 2001 to amend TEX. PROP. CODE §70.301 as it

did, expanding aircraft lien rights in Texas.

Rather, Movants' contention in this case is that the Texas statute cannot be applied

outside the borders of Texas to reach an aircraft hangared in Virginia, because the comparable

Virginia statutes do not provide for a lien for fueling an aircraft, and only provide lien rights for

"keepers" of aircraft; hence, Virginia principles of comity and public policy would be violated.

A contention of that nature has been expressly rejected by the U. S. Supreme Court, interpreting

the Full Faith and Credit clause. In *Bradford Electric Light Co., Inc. v. Clapper*, supra, the

Supreme Court held that the federal trial court, sitting in diversity in a wrongful death action

brought in New Hampshire by the survivor of a Vermont decedent, had erred in not applying the

Vermont workers' compensation statute, since the employment relation had been created in

Vermont, although the fatal work accident had occurred while the Vermont decedent had been

working in New Hampshire.  The Supreme Court expressly rejected arguments, substantially

similar to those advanced by Movants in this case, that the Vermont statute could not be applied

"extraterritorially" beyond its borders and to do so would violate the public policy of the forum

state (New Hampshire):

> It is contended only that the rights thus created [by the Vermont statute] need not
> be recognized in an action brought in another state; that a provision which
> Vermont may validly enforce in its own courts need not be given effect when the
> same facts are presented for adjudication in New Hampshire.   The answer is that
> such recognition in New Hampshire of the rights created by the Vermont act,
> cannot, in any proper sense, be termed an extraterritorial application of that act.

Id., 286 U.S. at 157. In arriving at this conclusion, the Supreme Court expressly rejected the

13

contention that the Vermont statute should not be applied because its provisions differed so substantially from the provisions of the New Hampshire workmen's compensation statute that application of the Vermont statute would violate New Hampshire public policy.  Id., at 161-162. That holding disposes of Movants' contentions in this case.

Indeed, it is doubtful that the Virginia state courts would decline to apply the Texas statute on the facts presented in this case, even if Virginia law rather than the federal Constitution provided the rule of decision. None of the three Virginia Supreme Court opinions relied upon by Movants (at pp 19- 21 of their Brief) support the broad proclamations about Virginia public policy urged by Movants.  In *C.I.T. Corporation v. Guy*, 195 S.E. 659 (Va. 1938), the Virginia Supreme Court wisely held that a South Carolina statute entitled "An Act to Further Regulate the Running of Motor Vehicles in This State" [South Carolina] should not be applied in a Virginia state-court proceeding, arising from an automobile accident in Virginia,  to defeat a purchase-money lien. The South Carolina statute under review expressed an affirmative legislative intent that it should only be applied within South Carolina.  Id, 195 S.E. at 662-663. It is impossible to understand why Movants have cited the other two Virginia cases which Movants rely upon (at p. 19 of Movants' Brief) as supporting the proposition that application of the Texas lien statute would violate interstate comity and Virginia public policy in this case, since in both of the cited cases, the Virginia Supreme Court applied statutes enacted in other States to actions brought in Virginia, rejecting arguments, such as the one advanced by Movants in the case at bar, that application of such other states' statutes would offend Virginia public policy or principles of comity.[12]  From the cited cases, it appears that the Virginia Supreme

---

[12] In *Dreher v. Budget Rent-A-Car System, Inc*., 634 S.E.2d 324 (Va. 2006), the Virginia Supreme Court held that the Virginia trial court **should apply** the  New York statute making an

14

Court's understanding of comity and Virginia public policy differs dramatically from Movants' understanding.

> 2.  An adequate legal basis exists for Universal's *quantum meruit* counterclaim, and it is supported by competent evidence.

Count Two of Universal's Counterclaim, pled in *quantum meruit*, seeks monetary recovery against Movants for the unpaid fuel and services.  This cause of action is perfectly suited to the facts of this case. By its nature, *quantum meruit* is an extra-contractual cause of action, requiring no proof of a contract between the parties.  Therefore, the Court should take a dim view of Movants' contentions that *quantum meruit* may not be maintained in this case because Movants "were not involved with IJM's contract with Defendant," as argued in Movants' Brief at pp. 21- 23. Facts sufficient to establish the necessary elements for a  *quantum meruit* cause of action are proven in the affidavit of Universal's Supervisor of Collections, Ouida Caloway. Universal is thus entitled to proceed to trial on this case of action.  Movants have failed to show entitlement to defensive judgment on it as a matter of law; Universal has carried its summary-judgment burden to prove by competent evidence facts sufficient to support the cause of action, and genuine issues of material fact must be resolved in connection with it.

*Quantum meruit* has been upheld as a viable state-law theory of recovery in a diversity action in federal court arising from an aviation dispute.  In *Midcoast Aviation, Inc. v. General*

---

automobile owner vicariously liable for the negligence of its lessee, where the car rental had occurred in New York, and the accident (and ensuing litigation) had occurred in Virginia; indeed, holding that such a result was compelled by "principles of comity." Id. at 330.  In *Willard v. Aetna Casualty and Surety Co.*, 193 S.E. 2d 776 (Va. 1973), the Virginia Supreme Court held that a North Carolina statute providing a direct right of action by insured against insurer should be applied in a Virginia state-court proceeding by a plaintiff-insured who had purchased his policy while residing in North Carolina, even though Virginia law expressly disallowed such a direct action (rejecting the contention that application of the North Carolina statute would therefore offend Virginia public policy).

*Electric Credit Corp.,* 907 F.2d 732 (7th Cir. 1990), the Seventh Circuit upheld the right of a

subcontractor to recover in *quantum meruit* for unpaid refurbishing work it performed to upgrade

an aircraft.[13]

       The elements required for a cause of action in *quantum meruit* under Virginia law, as

cited in Movants' Brief at pp. 21-22, are substantially identical to the elements required to

maintain such an action under Texas law:

> (1) valuable services rendered or material furnished;
>
> (2) for the party sought to be charged;
>
> (3) which services or materials were accepted by the person sought to be charged,
> used and enjoyed by him;
>
> (4) under such circumstances as reasonably notifying the person sought to be
> charged that the party performing such services was expecting to be paid by the
> party sought to be charged.

Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc, 787 S.W.2d 942, 944 (Tex. 1990).

       As with Virginia law, *quantum meruit* is an equitable doctrine applied to avoid injustice

and to disgorge unjust enrichment by implying an agreement to compensate, without regard to

the parties' actual intent. See, e.g., *Campbell v. Northwestern National Life Ins. Co.*, 573 S.W.2d

496 (Tex. 1978); *Haws & Garett Gen. Contractors, Inc. v. Gorbett Brothers Welding Co.*, 480

S.W.2d 607 (Tex. 1972). If one party receives a benefit by accepting the goods or services

---

[13]The Seventh Circuit remanded the case, because the District Court had erroneously instructed the jury on the proper measure of damages. Id, 907 F.2d at 744. That part of the opinion is not applicable to the question presented on the Motion for Summary Judgment in the instant case: whether Universal may, at the threshold,  maintain the *quantum meruit* Count in its Counterclaim.

provided by another, the accepting party is obligated by principles of equity to pay the reasonable value of them. *Colbert v. Dallas Joint Stock Land Bank*, 150 S.W.2d 771, 773 (Tex. 1941). The right to recover in *quantum meruit*, as distinguished from a traditional contract action, is based on a promise "implied by law to pay for beneficial services rendered and knowingly accepted." *Davidson v. Clearman*, 391 S.W.2d 48, 50 (Tex. 1965). The terms *quantum meruit* and "implied contract" are often used interchangeably; the element of mutual agreement is not based on any written agreement between the parties, but is inferred from the circumstances. See *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, supra; *Duncan Coffee Co. v. Chiles*, 136 S.W.2d 929 (Tex. Civ. App. – Galveston, 1940), no writ.

Since *quantum meruit* is an equitable action, intended to disgorge unjust enrichment, the proper scope of inquiry when a defending party seeks summary judgment against it should not focus exclusively on the "equities" that would allegedly support the summary judgment movant's defenses, but, rather, on the whole equitable picture presented, including the equities underlying the position of the *quantum meruit* claimant – here, Universal. The *prima facie* elements are established in Ms. Caloway's Affidavit. The fuel and services Universal has funded for Movants, via credit card payments it made from Texas, benefitted Movants, regardless of the dealings between Movants' members and IJM, under circumstances implying an obligation to pay.

Universal's cause of action for *quantum meruit* is also supported by principles of equitable subrogation – an equitable doctrine with a long and liberal history of application in federal,[14] Virginia,[15] and Texas[16] courts. The basic equitable principle distilled from this line of

--------

[14]See e.g., *American Surety Co. of New York v. Bethlehem Nat. Bank*, 314 U.S. 314 (1941); *Vogel v. Veneman*, 276 F.3d 729 (5th Cir. 2002); *General Star Indem. Co. v. Vesta Fire*

cases is that a right of equitable subrogation arises by operation of law and is not dependent on

contract, by which upon payment of an indebtedness owed by a third party, the paying party

steps into the shoes of the party paid, and can then enforce the rights that party would have had if

not paid.  In this case, upon credit-card payment for the fuel and services physically supplied by

third-party vendors,[17] Universal stepped into the shoes of those third-party vendors, acquiring the

legal and equitable rights they would have had if not paid.  The  third-party vendors would have

had the right, among other possible rights, to proceed against Movants as the party who received

the fuel provided.  By equitable subrogation, Univesal has succeeded to those rights, which it

seeks to enforce in *quantum meruit*, as pled in Count Two of its Counterclaim.

Movants claim they owe nothing **to IJM**, the party with whom Movants' members

contracted; hence, they contend, they have established as a matter of law an equitable defense to

*quantum meruit* recovery in this case. However, this defensive contention – that the *quantum*

*meruit* case effectively seeks to make Movants pay twice for the fuel  – does not survive the

level of scrutiny it must be given at summary judgment, in which all reasonable inferences are to

be drawn in favor of Universal, with doubts about the existence of triable issues of fact to be

resolved against Movants. Since a genuine issue of material fact exists as to whether Movants

---

*Ins. Co.*,  173 F.3d 946 (5th Cir. 1999).

[15] See e.g., *Collins v. Blue Cross Of Virginia*, 193 S.E.2d 782 (Va. 1973); *Federal Land Bank v. Joynes*, 18 S.E.2d 917 (Va. 1942).

[16] See, e.g., *Bassett v. Mills*, 89 Tex. 162, 34 S.W. 93 (Tex. 1896); *II Deerfield Ltd. Partnership v. Henry Building, Inc.*, 41 S.W.3d 259, 268 (Tex. App. – San Antonio 2001), rev. den'd; and numerous Texas authorities collected at 68 TEX. JUR. 3d, Subrogation §7, at pp. 47-49.

[17]As proven in the supporting affidavit of Ouida Caloway, at pp.1-2.

can even be deemed to have "paid" IJM for the fuel in the first instance, Movants have failed to establish their claimed equitable defense to *quantum meruit* as a matter of law, as Rule 56 requires.   Movants' theory of "double payment" is far from established for summary judgment purposes on the record before this Court.

It is curious that Movants' Brief (at p. 6 ¶ 16) and the supporting affidavit from Mr. Beesley, who is apparently restructuring IJM (at ¶12) out of its insolvency, equivocate on the manner by which Movants "paid" IJM for the fuel in question per Movants' members' service contracts with IJM.  It is far from clear on the record before the Court – which Movants contend contains no genuine issue of material fact – whether Movants (or their members) made actual cash payments for the fuel to IJM, or whether the accounts between them were settled upon IJM's insolvency by vague "credits" issuing from IJM to the benefit of Movants (or of their members, who are not parties to this action), about which the summary judgment record provides no factual detail.  If such credits arose from unrelated transactions –and nothing in the summary judgment record proves they did not – Movants may not prevail on a "double payment" defense to the equitable *quantum meruit* action pled against them by way of Universal's Counterclaim. Again, this illustrates the presence of a genuine of material fact precluding summary judgment under FED. R. CIV. P. 56.

Under established summary judgment jurisprudence, it is Movants' burden to negate the existence of any evidence to support every element of the *quantum meruit* Counterclaim, and to establish its entitlement to judgment as a matter of law on the merits of it; and, in responding, Universal's burden is to prove competent facts supporting *quantum meruit*.  An examination of the summary judgment record plainly establishes which of these burdens has been made, and

which has not been.

        3.      No legal basis exists for the award of attorney's fees which Movants seek.

        A.      There is no contractual basis for Movants' request.

Absent a contractual or statutory basis, there is no authority for shifting the burden placed by "the American Rule" on Movants as the financially responsible parties for their legal representation in ths case. As Movants frequently point out throughout their Brief, no contractual relationship existed between them (or their sole members) and Universal.  It follows then that no contractual basis exists in this case for an award of attorney's fees in favor of Movants.  Nor do Movants claim any right to a recovery of attorney's fees in this case under Virginia law, which their Complaint emphatically identifies as the source of controlling law on the crucial issue of the validity of the liens against the Virginia-hangared aircraft at issue in this case.  (Complaint at ¶ 37.)  The fertile mind of counsel, however, has not rested there. It has instead devised an extraordinary claim for entitlement to an award of attorney's fees under TEX. PROP. CODE §70.306, obviously in the hopes of reaping a windfall.

        B.      Movants' action is not  " brought under" the Texas Property Code, but instead, attacks its applicability to this case.

Twenty-three of the twenty-five pages of Movants' capably written Brief are devoted to an all-out attack on the applicability of subchapter 70 of the Texas Property Code to this case, for an array of well-articulated reasons.  The final two pages of the Brief, however, make a 180-degree turn, to advocate the astonishing, self-contradictory proposition that Movants have actually "brought" this suit under that very set of laws!  Although Movants could only prevail in this case if they succeed in establishing that the Texas Property Code has no application to aircraft hangared in Virginia, they seek under the authority of TEX. PROP. CODE §70.306 a

discretionary award of attorney's fees that can only be made "in an action brought under this subchapter."[18]   An action based on the premise that a statute has no application beyond the borders of its jurisdiction cannot rationally be considered an action "brought under" that statute.

Movants' present request for recovery of attorneys' fees under the Texas statute is  "part of the substantive right of the suit," under the decision of the Supreme Court in *Missouri State Ins. Co. v. Jones*, 290 U.S. 199 (1933), and not a mere procedural appendage to the substantive legal claims made. As such, Movants' request for attorney's fees is to be governed by the laws of the State where the action arose.  See *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73-74 (5th Cir. 1987); *Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W. 2d 478 (Tex. App. — Dallas 1988). In this case, one need look no further than Movants' Complaint to determine Movants' theory as to which state's laws provide the substantive law governing this action. [19]

> C.   Movants have affirmatively pled that the lien validity issue
>       in this case is governed by Virginia law.

 Driven by the obvious desire to seek out the state law most favorable with respect to recovery of attorney's fees, Movants' Brief  now invokes the Texas Property Code as the controlling state law.  However,  Movants' Complaint urges a fatally different view of which state's law should control the disposition of the core legal issues presented in this case. Movants' Complaint (at ¶ 37) could not state it more clearly:

---

[18] The Texas lien statute at issue in this case, TEX. PROP. CODE §70.301, is part of subchapter 70 of the Texas Property Code, which also contains §70.306.

[19]Obviously, Universal contends that the Texas Property Code **does** govern the lien validity issues in this case.  If the Texas statutes do control on the lien validity issues, Movants could not then possibly claim to be a "prevailing party" in this case within the meaning of TEX. PROP. CODE  §70.306, for purposes of a possible discretionary award of attorney's fees in their favor.  If Movants prevail in this case on the substantive issue of the validity of the liens, it could only be because that issue is held to be governed by Virginia law, not Texas law.

"The lien laws of the Commonwealth of Virginia, not the State of Texas, apply to the liens on the two aircraft..."

The Complaint goes on to specify (at ¶ 38) that two Virginia statutes, Va. Code Ann. §§43-32 and 43-34.1, should be applied by the Court to invalidate the lien claims made in this case, because they do not provide for a lien on an aircraft for unpaid fuel.  (As noted earlier, other portions of Movants' Brief urge that the Texas Property Code can have no application beyond the borders of Texas with respect to aircraft hangared in Virginia, both by Movants' reading of the terms of the Texas statute, and as matter of comity and public policy.)  The Virginia statutes which Movants cite as controlling the substantive disposition of the lien-validity issues in this case provide no recovery of attorneys' fees for Movants.  On summary judgment, Movants have thus placed themselves in the untenable position of claiming the right as a matter of law to a remedy only provided for in a set of statutes -- the Texas Property Code – which they advocate cannot be applied to the case, based on its language, and because to do so would violate principles of comity and the public policy of Virginia.

An award of attorney's fees under the very statute whose application is attacked would not only be unjust and illogical on its face, it would also stand against several clear precedents on point.  Applying the holding of the Supreme Court in *Missouri State Ins. Co. v. Jones*, supra, that a request for attorneys' fees is " a part of the substantive right of a suit," several well-reasoned opinions have denied awards of attorney's fees that would have been available under Texas statutes in cases where the substantive law of another state controlled.  In *Smith v. EMC Corp*., 393 F.3d 590, 597-598 (5th Cir. 2004), the Fifth Circuit upheld the District Court's denial of attorneys' fees to a former employee who had prevailed at trial in a diversity action against his former Massachusetts-based employer, since the claims successfully made by the former

22

employee arose under contracts governed by Massachusetts law.  Similarly, in *Kucel v. Walter E. Heller & Co.*, <u>supra</u> at 73-74, the Fifth Circuit reversed an award of attorney's fees made as part of judgment in favor of an overpaying Texas borrower whose loan agreement with the lender was governed by Illinois law, which had no provision for recovery of the borrower's attorney's fees comparable to the Texas statute relied on by the borrower, holding:

> [T]he award of attorney's fees in a diversity case depends on the law of the state whose rules govern the substantive claims. *See Prudential Insurance Co. v. Carlson*, 126 F. 2d 607, 611 (10th Cir. 1942).

<u>Id.</u> at 73.  Also, an applicable Texas state court opinion rejected a claim for recovery of attorney's fees under Texas statute of the same kind now urged by Movants in the case at bar, where the law of another state, under which no such recovery of attorney's fees would be authorized, governed the substantive legal issues in the case: *Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W.2d 478 (Tex. App. – Dallas 1998) (rejecting claimant's contention, where parties agreed New York law governed the substantive issues in the case, that Texas statutory attorneys' fees should be awarded as a merely procedural remedy).

Invoking a Texas statute which Movants contend does not apply to the substantive issue to be decided in this case, Movants claim entitlement as a matter of law to an award of attorney's fees which could not be granted to them in federal or state court in Texas.  Such an absurd request cries out for denial.

## **PRAYER**

Wherefore, Defendant/ Counter-Plaintiff Universal Weather and Aviation, Inc., prays that

the Motion for Partial Summary Judgment filed in this action by Plaintiffs/ Counter-Defendants

Westwind Acquisition Co. LLC, and Monroe, LLC, be denied; and that Defendant/ Counter-

Plaintiff Universal Weather and Aviation, Inc., may have such other and further relief, both

general and special, at law or in equity, to which it may show itself to be justly entitled.


Respectfully submitted,

*/s/Arnold G. Polanco*
Arnold G. Polanco (Admitted *Pro Haec Vice*)
Mark C. Watler (Admitted *Pro Haec Vice*)
ROSS, BANKS, MAY, CRON & CAVIN, P. C.
2 Riverway, Suite 700
Houston, TX 77056
Phone: (713) 626-1200
Fax: (713) 623-6014
Email:       apolanco@rossbanks.com
                  mwatler@rossbanks.com


*/s/Cynthia Kaplan Revesman*
Cynthia Kaplan Revesman (Of Counsel)
Law Offices of Cynthia Kaplan Revesman, PLC
4020 University Drive, Suite 207
Fairfax, VA 22030
Phone: (703) 383-0154
Fax: (703) 691-0744
Email:       crevesman@revesmanlaw.com

*Counsel for Defendant/ Counter-Plaintiff*
*Universal Weather and Aviation, Inc.*

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on Ocotober 19, 2009, I electronically filed the foregoing Memorandum of Authorities, with Supporting Affidavit of Ouida Caloway**,** with the Clerk of Court, using the CM/ ECF system, which will then send a notification of such filing to opposing counsel identified hereinbelow.  I further certify that on the date of such filing, I served the foregoing by electronic mail, as follows:

           Mr. Timothy J. Lynes               Timothy.Lynes@ kattenlaw.com
           Katten Muchin Rosenman, LLP
           2900 K Street, N.W., Suite 200
           Washington, D.C. 20007

                        */s/Mark C. Watler*_____
                        Mark C. Watler