**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| WESTWIND ACQUISITION CO., LLC, ) | |
| ) | |
| and ) | |
| ) | |
| MONROE, LLC, ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:09cv551 |
| ) | TSE/TRJ |
| v. ) | |
| ) | |
| UNIVERSAL WEATHER AND ) | |
| AVIATION, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Westwind Acquisition Co., LLC and Monroe, LLC (collectively, "Plaintiffs"),

by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 56,

submit this Reply in support of their Motion for Partial Summary Judgment against Defendant

Universal Weather and Aviation, Inc. ("Universal" or "Defendant").

## INTRODUCTION

This matter simply involves a credit card company, Defendant Universal, placing illegal

liens on the personal property of Plaintiffs, who never themselves used the credit cards, had no

relationship whatsoever with the issuer of the credit cards, and who paid for or were credited for

the amounts charged by the actual user of the credit cards, non-party International Jet

Management, Inc. ("IJM").  Defendant's claim plainly seeks to have Plaintiffs pay twice for

goods and services received, so that Defendant can shift its losses to Plaintiffs – losses which

arise from the failure of IJM to pay Defendant amounts due under Defendant's agreement with IJM. Such a result would be inequitable and unjust.

In opposition to Plaintiffs' Motion for Summary Judgment, Defendant identifies five (5) alleged disputed material facts in its Response ("Def. Resp."), at p. 2, which it contends preclude the Court from granting the relief sought by Plaintiffs. An examination of these facts indicates that they are either (i) not material and/or relevant to the issues presented, and/or (ii) are questions of law, properly put before the Court. Defendant also identifies four (4) additional "undisputed facts" in its Response, at pp. 4-5, which it contends are material to the Court's ruling on Plaintiffs' Motion. Like the five alleged disputed material facts, these additional four undisputed facts offer no valid reason why the Court should not grant summary judgment in Plaintiffs' favor.

In addition to providing no new material facts to the Court and failing to offer any evidence as to the insufficiency and/or alleged falsity of Plaintiffs' material facts, Defendant's legal arguments regarding the application of Texas Property Code § 70.301 are incorrect. Defendant would have the Court ignore the primary goal of statutory interpretation – upholding the legislature's intent – in favor of a very liberal, expansive, and ultimately incorrect interpretation of the statute. This interpretation would directly contradict Texas case law applying this very statute, which maintains that the express language of the statute is to be given paramount importance.

Defendant's Response ignores the magnitude of constitutional law that upholds a state's right to refuse to enforce laws violative of its public policy. Defendant's Response also fails to recognize the most important aspects of quantum meruit: the existence of some relationship between Plaintiffs and Defendant which would cause a court in equity to imply a contract, and

the prevention of unjust enrichment.  As Plaintiffs have already paid for the goods and services at issue, and had no relationship with Defendant, Defendant's claim of quantum meruit must fail. Finally, in regard to Plaintiffs' request for attorney's fees, Defendant fails to recognize that this Court may simply determine that Defendant does not have "fueler" rights under the Texas statute at issue, and that this decision would not preclude the awarding of attorney's fees under the same chapter of the Texas Code.  Defendant's arguments, whether factual or legal, fail to give any valid reasons as to why summary judgment in Plaintiffs' favor should not be granted.

## ARGUMENT

### I.      There Are No Material Facts In Dispute.

In its Response to Plaintiffs' Motion for Partial Summary Judgment, Defendant Universal alleges that genuine issues of material fact remain in this case which preclude summary judgment.  However, in its Response, Defendant does not provide <u>any</u> actual evidence disputing any of Plaintiffs' proposed substantive material facts; instead, Defendant merely offers five "facts" allegedly supported by the self-serving affidavit of Ouida Caloway ("Caloway Aff."). This affidavit is insufficient as a matter of law to create any factual dispute that would preclude the Court from granting Plaintiffs' Motion.

A non-moving party can defeat a summary judgment motion by producing evidence sufficient to establish a genuine issue of material fact for trial; such evidence can include pleadings, affidavits, or other discovery vehicles, such as answers to interrogatories.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  Federal Rule of Civil Procedure 56 further clarifies that an adverse party cannot rely on mere allegations or denials of facts in opposing a motion for summary judgment; the adverse party must set forth "<u>specific facts</u> showing a genuine issue for trial." Fed. R. Civ. P 56(e) (emphasis added); *see also Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (finding that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

As the non-moving party, Defendant must proffer sufficient evidence on which a reasonable jury could find in its favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Ms. Caloway's self-serving affidavit, as will be discussed below, does not constitute evidence sufficient to create a question of fact with regard to Plaintiffs' claims.  Both the Fourth and Fifth Circuits have held repeatedly that self-serving affidavits do not constitute sufficient evidence necessary to defeat a motion for summary judgment.  *See, e.g., Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (finding self-serving affidavit which simply described content of agreement not enough to defeat summary judgment motion) (citing *Anderson*, 477 U.S. at 249); *Lechuga v. S. Pac. Transp*. Co., 949 F.2d 790, 798 (5th Cir. 1992) (holding that party's affidavit, which merely asserted that the presence of law enforcement officers constituted a "benefit" to the other party, was conclusory and inadequate to counter summary judgment evidence).

Defendant does not dispute any of Plaintiffs' thirty (30) undisputed material facts, *see* Plaintiffs' Motion for Partial Summary Judgment ("Pl. Mot.") at pp. 4-9, as required by Local Rule 56(B), either in its Response or in the Caloway Affidavit.  The five alleged disputed material facts, which are supposedly supported by the Caloway Affidavit, are discussed below.  These inadequate "facts" amount to nothing more than self-serving statements, legal questions, irrelevant issues, and/or a reiteration of facts not in dispute:

1.   <u>Whether Plaintiffs can claim the "benefit" of payments made for fuel by their members.</u>

Whether or not the payments made to IJM for the credit card charges at issue were made directly by Plaintiffs, or by Plaintiffs' individual members, William Conway ("Conway") and the

Buccini Pollin Group, Inc. ("Buccini Pollin"), which each executed an aircraft management agreement with IJM, Pl. Mot., Exs. 4 and 6, and who each had a contractual obligation to pay IJM for the credit card charges, is not relevant to the issues presented.  The only question relevant to Count One (Foreclosure of Liens) and Count Two (Quantum Meruit) of Defendant's Counterclaim is whether IJM is due and owing any money for amounts due from the credit card charges Defendant seeks to collect, and whether Plaintiffs have been unjustly enriched. Paragraph 12 of the Affidavit of Mark Beesley, Pl. Mot., Ex. 7, the restructuring officer of IJM, is uncontradicted by <u>any</u> admissible evidence.  This affidavit plainly states that IJM is not owed any money for credit card charges incurred for Plaintiffs' aircraft, and further that such amounts were paid by Plaintiffs or credited to Plaintiffs in accordance with the relevant management agreements executed by Plaintiffs' sole members, Conway and Buccini Pollin.  In this regard it does not matter if such amounts were paid by Plaintiffs directly, or by Conway and Buccini Pollin – what matters is that all amounts due to IJM were satisfied in full.  Neither Plaintiffs, who own the aircraft in question, nor their sole members, who operated the aircraft with the assistance of IJM's management, received any benefit which they have not paid for in some manner.  This remains true, notwithstanding the unsupported, self-serving denial of this fact in the Caloway Affidavit.  Furthermore, Plaintiffs had no relationship with Defendant that would lead the Court to imply an obligation to pay Defendant.

> 2. <u>Whether Plaintiffs paid IJM for goods and services charged to the credit cards in cash, or by means of credit issued under the management agreements, and if issued by credit, whether such credits bear any factual nexus to the transactions at issue in this case.</u>

This alleged material issue is also not relevant to Counts One and Two of Defendant's Counterclaim.  The only relevant question is, again, whether or not IJM is due and owing any money under the relevant management contracts for amounts due from the credit card charges

Defendant seeks to collect. The answer, again, remains "no" for the reasons discussed above. Plaintiffs produced in discovery their payment and credit records relating to the charges Defendant seeks to collect.  If Defendant desired to understand the accounting that took place pursuant to the management agreements for the operation of Plaintiffs' respective aircraft, such as who paid what, when, and how, and what occurrences may have given rise to credits in Plaintiffs' favor, then Defendant was free to subpoena IJM's records and depose Mr. Beesley.  It did neither, and only presents the Caloway Affidavit in response, which in essence only says that she does not understand why the Plaintiffs do not owe IJM any money for the credit card charges.

Under Rule 56, Defendant, as the non-moving party, cannot "simply show that there is some metaphysical doubt as to the material facts" in order to defeat summary judgment. *Matsushita*, 475 U.S. at 587.  Defendant is required to set forth <u>specific facts</u> showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  The failure to understand the reasons IJM is not owed any money for the credit card charges is not a specific fact which calls into question Mr. Beesley's sworn statement in his affidavit, based upon his personal knowledge and the records of IJM kept in the ordinary course of its business, that no money is owed to IJM for the credit card charges at issue.

   3.   <u>Whether Plaintiffs' Exhibit 1, which summarizes Defendant Universal's invoices, is factually accurate.</u>

There is no question that Exhibit 2 correctly summarizes the invoices pertaining to the aircraft owned by Plaintiff Monroe.  With regard to the aircraft owned by Plaintiff Westwind, there were slight discrepancies in the fuel charges as listed on Exhibit 1.  The total fuel charges listed for Plaintiff Westwind's aircraft failed to include $12,673.51 in charges identified on Universal invoice 1714624, which was <u>first produced</u> by Defendant at close of business on the

last day of discovery, and after Plaintiffs' Motion was filed.  Plaintiffs do not challenge the validity of this invoice.  A copy of this invoice is attached hereto as Exhibit 13.

With regard to Universal invoice 1703029, questioned on page three of the Caloway Affidavit, this invoice does not list any fuel charges at all.  The <u>only</u> charge listed on invoice 1703029 is one for $186.10, which was not a charge for fuel.  Furthermore, this is the charge shown on Exhibit 1 in regard to invoice 1703029, <u>not</u> the $5,838.27 referred to in Caloway's Affidavit.  No material whatsoever has been produced in discovery with regard to this alleged $5,838.27 charge.  A copy of this invoice is attached hereto as Exhibit 14.

Caloway's Affidavit also questions Exhibit 1's identification of $7,316.59 in fuel charges on Universal invoice 1713228.  This invoice <u>only</u> shows fuel charges of $7,316.59, <u>not</u> the $8,518.79 referred to in the Caloway Affidavit. This difference represents charges for items other than fuel, as shown on invoice 1713228, which is attached hereto as Exhibit 15.

Regardless, these minor differences do not change the undisputed material facts as otherwise established by Plaintiffs, and which are determinative of the outcome of this matter. The material facts as established are that Defendant did not ever itself directly sell or physically place fuel into Plaintiffs' aircraft, in Texas, or anywhere else, Caloway Aff. at p. 2; Pl. Mot., Ex. 8, at Answer ¶ 8, and that Plaintiffs and their members do not owe IJM any money for the credit card charges which Defendant seeks to collect.  Pl. Mot., Ex. 7 at ¶ 12.

    4.   <u>Whether the aircraft could have been fueled without payment having been made (from Texas, by Universal).</u>

The issue posed by the Defendant in this "question" is again irrelevant to the issues in this case.  One can assume that third party vendors who fueled Plaintiffs' aircraft would not have honored the credit cards used by IJM and issued by Defendant, unless the vendors were to be

paid by someone, at some time, after the fuel was pumped into the aircraft. In any case, this contention is not probative into the issues before the Court.

      5.    <u>Whether in providing payments for credit card charges this makes Defendant Universal a "person who . . . fuels . . . an aircraft " under the Texas Property Code.</u>

This alleged disputed material fact is exactly the legal question before the Court. To stylize it as a "mixed question of law and fact" which somehow precludes summary judgment is misleading.

With regard to the four (4) other "undisputed material facts in this case, omitted from [Plaintiffs'] listing," Def. Resp. at pp. 4-5, Plaintiffs would note, for the convenience of the Court, that it is undisputed that the aircraft were actually fueled at numerous locations outside of Texas (other than two occasions in regard to the Monroe Aircraft) by third party vendors as indicated on Exhibits 1 and 2 to Plaintiffs' Motion, and that the sole members of Plaintiffs received the fuel in question when it was pumped into their aircraft. To this extent, the sole members of Plaintiffs and Plaintiffs themselves received a benefit for which IJM was paid, or for which they were credited by IJM pursuant to the relevant management agreements. Pl. Mot., Ex. 7 at ¶ 12. Plaintiffs therefore have not been unjustly enriched for any fuel or services received. Plaintiffs do not dispute that Defendant issued credit cards to IJM, and that IJM used those cards for the charges indicated on Exhibits 1 and 2. It is also undisputed that IJM had a credit card agreement with Defendant, Pl. Mot., Ex. 9, and that Defendant had a corresponding Chase Commercial Card Program Master Agreement with Chase Manhattan Bank USA, National Association, attached hereto as Exhibit 16, which required Defendant to pay for the charges incurred by IJM. It is undisputed that Plaintiffs had no contact with Defendant and that Defendant had no contact with the aircraft. Pl. Mot, Ex. 3 at ¶ 9 and Ex. 5 ¶ 9. at It is

furthermore undisputed that Defendant paid these charges to Chase Manhattan or to the relevant party by wire transfers issued from unknown banks, pursuant to orders issued from Defendant's offices in Houston, Texas.  Caloway Aff. at p. 2.  This last undisputed fact is only relevant to the legal question of whether Defendant's conduct of ordering wire transfers from its Houston offices makes it a person who "fuels" an aircraft under Tex. Prop. Code § 70.301(a).

**II.      Defendant's Arguments as to Why Summary Judgment Is Inappropriate Fail as a Matter of Law.**

Defendant placed liens on Plaintiffs' two aircraft pursuant to a provision of the Texas Property Code, which states as follows:

> **A person who** stores, **fuels**, repairs, or performs maintenance work on an aircraft has a lien on the aircraft for:
>
> (1) the amount due under a contract for the storage, fuel, repairs, or maintenance work; or
>
> (2) if no amount is specified by contract, the reasonable and usual compensation for the storage, fuel, repairs, or maintenance work.

Tex. Prop. Code Ann. § 70.301(a) ("Section 70.301(a)") (emphasis added).  Defendant contends that, as the provider of credit cards to IJM, which could be used to purchase fuel, that it should be considered a "fueler" under Section 70.301(a).  Plaintiffs submit that Defendant is not a "fueler" as per the proper statutory interpretation of Section 70.301(a); that the statute is furthermore inapplicable outside of Texas; and that application of this statute to Plaintiffs' aircraft, which were hangared in Virginia during the time at issue and were fueled at airports throughout the world, would violate Virginia public policy.

**A.      Section 70.301(a) must be interpreted to give effect to the intent of the legislature as expressed through the words used in the statute.**

Defendant's suggested interpretation of Section 70.301(a) is incorrect.  Defendant's proposed interpretation would add a class of protected parties – Texas financiers – to the fuelers

and materialmen protected by the explicit language of Section 70.301(a).   A Texas court of appeals, <u>interpreting this very statute</u>, noted, as Plaintiffs did in their initial brief, Pl. Mot. at p. 16, that a court "must always ascertain legislative intent as expressed in the language of the statute" when construing a statute.   *Harriss v. Norsworthy*, 869 S.W.2d 600, 602 (Tex. App. 1994) (citing *State v. Terrell*, 588 S.W.2d 784, 786 (Tex. 1979); *Linick v. Employers Mut. Cas., Co.*, 822 S.W.2d 297, 300 (Tex. App. 1991)).   Intent is to be determined by "the language of the statute itself, reading the statute as a whole." *Id.* (citing *Woods v. Littleton*, 554 S.W.2d 662, 665 (Tex. 1977)).   More importantly, however, is that the *Harriss* court, in interpreting Section 70.301(a), specifically stated that, "<u>[e]very word included in a statute must be presumed to have been used for a purpose and every word **excluded** for a purpose</u>." *Id.* (quoting *Linick*, 822 S.W.2d at 300-01) (emphasis added).   As an instructive example, the *Harriss* court refused to uphold a lien for parts ordered but never installed on an aircraft, reasoning that because "the statute is specific as to <u>performing</u> work on an aircraft, procuring parts may be preparatory but is not '<u>work performed</u> on the aircraft.'"   *Id.* (emphasis added).   Financing the payment of fuel may likewise be considered "preparatory" or possibly "related" to fueling an aircraft, but cannot be considered the same activity as "fueling an aircraft."

This simple, straightforward standard of interpretation applicable to Section 70.301(a) instructs a court to interpret a "person who fuels" to mean exactly that: a physical provider of fuel, such as filling station owner Mr. Pigman, *see* Pl. Mot., Ex. 12, and not a credit card company like Defendant.   Mr. Pigman, a Texas filling station owner, stated in testimony before the Texas legislature that aircraft sometimes flew off without paying . . . him, the filling station owner.   Pl. Mot., Ex. 12.   It is undisputed that Defendant is not a filling station owner, nor has Defendant ever owned or even come into contact with the fuel in question.   *See* Caloway Aff. at

p. 2; Pl. Mot., Ex. 8 at Answer ¶ 8, and Ex. 9.  Similarly, in *Harriss*, the court refused to infer from Section 70.301(a) a provision for storage liens because such a provision was "left unexpressed by the statute itself."  *Id*. (citing *Seay v. Hall*, 677 S.W.2d 19, 25 (Tex. 1984)).  In drafting Section 70.301(a), the Texas legislature likewise "left unexpressed" any provision for credit card companies or financers of fuel, and the Court cannot "put into effect an interpretation which the legislature might have wished, but failed, to express."  *Id*. (citing *RepublicBank Dallas v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985)).

Defendant further suggests that the Court should interpret Section 70.301(a) in the light of "commercial reality."  Def. Resp. at p. 7.  However, "commercial reality" is not a proper basis for interpretation of a statute.  Statutes are to be interpreted based on their language and the intent of the legislature, not on someone's notion of what is or is not "commercial reality."  If the Texas legislature wanted to protect credit card issuers in Texas, it could have done so – but it did not.  The fact that Defendant may have ultimately paid for fuel and issued orders for such payment from its Houston offices does not make it a "fueler", any more than a purchase of coffee in the morning with a Visa card makes the bank that issued the card a barista.

Even so, Defendant's "liberal construction" of Section 70.301(a) still cannot lead one to conclude that the statute applies to credit card companies, or financers of fuel, such as Defendant.  Defendant overlooks an important qualification made clear by the Texas Supreme Court: that remedial and curative statutes "are liberally construed only to effectuate the intent of the legislature in enacting them and not to other ends."  *City of Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975) (citing *City of Mason v. West Tex. Utils. Co.*, 237 S.W.2d 273 (Tex. 1951) (emphasis added)).  Nothing in the legislative history or text of Section 70.301(a) suggests that the Texas legislature intended to give financers of aircraft fuel the ability to place

liens on aircraft.  Defendant's "liberal" interpretation of the statute corrupts the legislative intent and plain language of Section 70.301(a) to suit "other ends" as prohibited by *City of Waco*.[1]

Finally, Defendant's argument that its interpretation of Section 70.301(a) is consistent with the federal establishment of a uniform registry of aviation liens misleads the Court.  Def. Resp. at pp. 8-9.  Federal law established the procedure for <u>perfection</u> of liens; the underlying rights of the respective parties must still be found in state law.  *See* 14 C.F.R. 49.17(c) ("The validity of any instrument eligible for recording under this part is governed by the laws of the state, possession, Puerto Rico, or the District of Columbia, as the case may be . . . The recording of a conveyance is not a decision of the FAA that the instrument does, in fact affect title to . . . the aircraft."); 49 U.S.C. § 44108(c)(1).  Plaintiffs have established a number of reasons why Section 70.301(a) does not apply to this matter, *i.e.*, Defendant is not a "fueler" as defined by the statute, the statute does not apply to fuelers outside of Texas, and the statute violates Virginia public policy.  The fact that application of the statute is not supported by Texas or Virginia law is the end of the analysis regarding the validity of the liens.  Congress' authorization of a central repository for the <u>filing</u> of liens has no bearing on the <u>validity</u> of any lien filed with the Federal Aviation Administration, which must be supported by state law.

---

[1]     Defendant's reliance on *General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139 (Fla. 3d Dist. Ct. App. 1995), is misplaced.  In that case, the party who placed a lien on an aircraft was the vendor who actually provided the fuel.  *Id.* at 1141 (noting that the party who placed the lien was "in the business of selling aircraft fuel").  *General Electric* is also inapplicable because the issue in that case was the location of the aircraft at the time the lien was properly perfected.  Plaintiffs, on the other hand, maintain that liens placed on their aircraft are improper because Defendant is not a fueler, the aircraft were hangared in Virginia and the vast majority of the charges at issue were not incurred by IJM in Texas.

**B.      The Full Faith and Credit Clause does not require Section 70.301(a) to be enforced in Virginia because the statute violates Virginia public policy.**

Assuming the Court finds that a credit card provider like Defendant is a "fueler" within the meaning of Section 70.301(a), Defendant also contends that the Full Faith and Credit Clause requires the enforcement of Section 70.301(a) outside Texas.  Plaintiffs, however, submit that applying Section 70.301(a) to fuelers outside Texas is improper because the Texas legislature did not intend for the statute to have extraterritorial application, and also because enforcement of Section 70.301(a) in Virginia would violate Virginia public policy on this issue, as expressed in its aircraft hangar keeper statutes, Va. Code Ann. §§ 43-32 and 43-341.  Pl. Mot. at p. 14.

Defendant states that the "only limitation applicable to [the Full Faith and Credit Clause] is in a situation in which the state statute in question exceeded the legislative jurisdiction of the enacting state."  Def. Resp. at p. 12 (emphasis added).  Plaintiffs do in fact submit this exact point to the Court: that applying Section 70.301(a) to the act of physically fueling an aircraft outside Texas is improper because the Texas Legislature did not intend for the statute to have extraterritorial application.  Pl. Mot. at p. 14.

Defendant's argument, however, that this is the "only limitation" ignores constitutional jurisprudence which recognizes a number of reasons why one state need not enforce the laws of another state.  It is a well-established and frequently discussed principle of constitutional law that one state is not required to apply another state's law if such application would violate the first state's legitimate public policy.  *See, e.g., Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 489 (2003); *Howlett v. Rose*, 496 U.S. 356, 382 n. 26 (1990); *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 330 (Va. 2006); *C.I.T. Corp. v. Guy*, 195 S.E. 659, 662-63 (Va. 1938).  As an example, in *Bradford Electric Light Co. v. Clapper*, 286 U.S. 145, 159-160 (1932), cited to by Defendant, Def. Resp. at p. 12, the Supreme Court lists a myriad of reasons why a state may

choose not to enforce the laws of another, including public policy concerns.  The crux of the Court's reasoning in *Bradford*, in deciding that a Vermont statue should apply to the New Hampshire action, was that the parties had expressly subjected themselves to the Vermont statute through their conduct within Vermont.  286 U.S. at 157.

Unlike the parties in *Bradford*, Plaintiffs have <u>never</u> subjected themselves to the Texas Property Code or any other relevant Texas law, as far as they are aware.  For this reason and for the reasons stated in Plaintiffs' Motion, at pp. 23-26, namely, 1) that the Texas legislature never intended for Section 70.301(a) to apply outside Texas, and 2) that Virginia's aircraft lien statute only applies to "keepers" of aircraft and has no provision for liens for financiers of aviation-related products and services, the application of the Texas fuel lien statute in this case conflicts with the intent of the Texas legislature and with Virginia public policy, and should not be enforced by this Court.

**C.    Defendant is not entitled to payment under quantum meruit because Plaintiffs have paid for or received credit for all goods and services received, have not been unjustly enriched, and no facts exist upon which to imply a contract between Plaintiffs and Defendant.**

Defendant's arguments as to why it is entitled to recover under quantum meruit are perplexing.  Defendant notes that quantum meruit requires no proof of a contract between the parties, yet also compares its cause of action for quantum meruit to subrogation, Def. Resp. at p. 15, which as the Court well knows, generally involves a contract between two parties.[2]

---

[2]    *See, e.g., Vogel v. Veneman,* 276 F.3d 729 (Fifth Cir. 2002) (subrogation claimed raised by lender, secured with a deed of trust on property); *Collins v. Blue Cross of Va.,* 193 S.E.2d 782 (Va. 1973) (subrogation claim raised by health insurance company in the context of a health insurance contract); *II Deerfield Ltd. P'ship v. Henry Building, Inc.,* 41 S.W.2d 259 (Tex. App. 2001) (subrogation claim raised by one party to a construction contract).

As noted numerous times previously, Plaintiffs and Defendant were never in privity of contract.[3]

Regardless, an argument for equitable subrogation does not even make sense in the context of this case.  As Defendant notes, equitable subrogation involves an indebtedness owed by one party to another; a third party who paid the debt owed to the other, in turn, can step into the shoes of the other party so paid, and enforce the rights that party would have had if it had not paid.  In the context of this case, Defendant has paid IJM's debts to the third party fuel vendors; the only party's "shoes" Defendant could step into are the third party vendors', to enforce any rights the vendors may have had against <u>IJM</u>, not against Plaintiffs.

To the extent that Defendant contends that it has the right to a claim for quantum meruit against Plaintiffs because the doctrine of "equitable subrogation" or "legal subrogation" should apply to the relationship between Plaintiffs and Defendant, Defendant misses the point.  In order to sustain such a claim, facts must exist to imply a contract at law between Plaintiffs and Defendant.  *See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp.*, 961 F.2d 489, 491-93 (4th Cir. 1992) ("where it appears from all the facts that the conferral of such benefit was the product of fraud, misrepresentation or bad faith by the party accepting and retaining such benefit, equity will imply an obligation to make payment").

The Texas Supreme Court case cited to by Defendant, *Haws & Garrett General Contractors v. Gorbett Bros. Welding Co., Inc.*, 480 S.W.2d 607, 609 (Tex. 1972), also supports this assertion.  In *Haws*, the Texas Supreme Court notes that an implied contract is "inferred from the circumstances" such as a "meeting of the minds of the parties as implied from and

---

[3]     Defendant's reliance on *Midcoast Aviation, Inc. v. General Electric Credit Corp.*, 907 F.2d 732 (7th Cir. 1990), is curious, as that case involved the application of Illinois law. In addition, the party from which the plaintiff was seeking reimbursement had given direct assurances to the plaintiff that its work would be reimbursed. *Id*. at 735-36.  There is no evidence of such assurances or even contact between the parties in the case at bar.

evidenced by their conduct and course of dealing." In the case at bar it is undisputed that there was <u>no</u> conduct and <u>no</u> course of dealing between Plaintiffs and Defendant. Plaintiffs never requested products or services directly from Defendant, and never expected to pay Defendant directly for any products or services. Pl. Mot., Ex. 3 at ¶ 9 and Ex. 5 at ¶ 9. It is impossible to infer that there was an implied contract between the parties to this litigation, as they had no actual <u>contact</u> with each other. In such circumstances a claim for relief under the theory of quantum meruit must fail as a matter of law.

Defendant also notes that quantum meruit is "intended to disgorge unjust enrichment" and that an "accepting party is obligated by principles of equity to pay the reasonable value" of goods or services. Def. Resp. at pp. 16-17. Yet Ms. Caloway's affidavit provides no facts to dispute Mr. Beesley's affidavit, which states that Plaintiffs <u>have paid IJM for all aviation-related services received</u>. Pl. Mot., Ex 7 at ¶ 12. How can Plaintiffs be unjustly enriched, if they have paid for services provided? What equitable means would be served by forcing Plaintiffs to pay twice for the same services?

Defendant again makes the self-serving statement that questions of fact sufficient to defeat Plaintiffs' summary judgment motion, in regard to Defendant's quantum meruit claim, are established in the Caloway Affidavit. Plaintiffs again note that self-serving, conclusory statements are not sufficient to preclude summary judgment. There is no genuine issue of material fact regarding whether Plaintiffs have "'paid' IJM for the fuel in the first instance" as Defendant states. Def. Resp. at p. 19. Plaintiffs have produced evidence that they have, and Defendant has offered no evidence whatsoever to show that they have not. Whether Plaintiffs satisfied accounts with IJM through a check sent at the end of the contract, or through previous

amounts owed by IJM (*i.e.*, credits) is irrelevant because Plaintiffs' accounts with IJM were both paid in full.

### III. Plaintiffs are entitled to attorney's fees under Section 70.301(a) because this matter was brought under that statute.

Plaintiffs' first argument regarding this matter is that Defendant is not a "fueler" under the Texas statute at issue. Should the Court agree with Plaintiffs on this point, then this matter has certainly been "brought under" the Texas Property Code, and the Court should award attorneys' fees to Plaintiffs pursuant to Section 70.306 of the Texas Property Code. Contrary to Defendant's assertion, Def. Resp. at p. 20, Plaintiffs do not necessarily identify Virginia as the sole "source of controlling law" on this issue. Rather, Plaintiffs invite the Court to interpret the Texas statute as it may or may not apply to financers of fuel. Should the Court find that it does, Plaintiffs would argue that, while the statute may be applicable in Texas, it has no application outside of Texas. Plaintiffs also contend that, although the Texas Property Code ultimately may not apply to the case at bar, this matter was still "brought under" the Code because of Defendant's bad acts in filing the illegal liens. Defendant placed liens on Plaintiffs' personal property pursuant to the Texas Property Code, period. Plaintiffs filed this lawsuit challenging the application of this law. Clearly this suit involves the interpretation of the Texas Property Code, for better or for worse.

Plaintiffs do not hope to reap a windfall by bringing this suit, Def. Resp. at p. 20, but only hope to remove the improper liens placed on their private property and to recover fees for the extraordinary effort and expenses incurred in removing the improper liens. Further, without the award of attorney's fees, Defendant may not be dissuaded from placing improper liens on other aircraft under the same statute, and other aircraft owners may find themselves faced with this same unpleasant and unnecessary situation.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Westwind Acquisition Co., LLC and Monroe, LLC, by and through counsel, again respectfully request that this Court grant their Motion for Partial Summary Judgment on Count One of Plaintiffs' Complaint, and grant summary judgment as a matter of law dismissing Counts One and Two of Defendant's Counterclaim.

Dated: October 27, 2009
Washington, D.C.

Respectfully submitted,

_____/s/_____
Timothy J. Lynes (VSB No. 31836)
Mandie E. Landry (VSB No. 71183)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, N.W., Suite 200
Washington, D.C. 20007
Phone: (202) 625-3686
Fax:    (202) 298-7570
Email: Timothy.Lynes@kattenlaw.com
        Mandie.Landry@kattenlaw.com
*Counsel for Plaintiffs*
*Westwind Acquisition, Co., LLC and*
*Monroe, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October 2009, I electronically filed the foregoing Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Cynthia Kaplan Revesman
> Law Offices of Cynthia Kaplan Revesman, PLC
> 4020 University Drive, Suite 207
> Fairfax, Virginia 22030
> Phone: (703) 383-0154
> Fax: (703) 691-0744
> Email: crevesman@revesmanlaw.com
> *Counsel for Defendant*
> *Universal Weather and Aviation, Inc.*

I also sent the foregoing by electronic mail to the following:

> Arnold G. Polanco
> Ross, Banks, May, Cron & Cavin, P.C.
> 2 Riverway, Suite 700
> Houston, Texas 77056
> Tel: (713) 626-1200
> Fax (713) 623-6014
> Email: apolanco@rossbanks.com
> *Counsel for Defendant*
> *Universal Weather and Aviation, Inc.*

> _____/s/_____
> Timothy J. Lynes