IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
NOV - 9 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| WESTWIND ACQUISITION CO. LLC, et al., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:09cv551 |
| UNIVERSAL WEATHER AND AVIATION, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In this diversity declaratory judgment action, plaintiffs seek a declaration invalidating liens on plaintiffs' aircraft, liens defendant claims it has as a result of a Texas statute authorizing liens in favor of unpaid providers of aircraft fuel and services. Yet, defendant is not a provider of fuel; it is, instead, a financing company that paid credit card charges incurred by the aircraft management company plaintiffs hired to operate their airplanes. The management company is now insolvent and failed to pay its credit card bills. Defendant argues that the liens are created in its favor under Texas law even though it did not directly provide fuel and services for the aircraft. It also argues that it is entitled to recover the management company's unpaid debt directly from plaintiffs under a *quantum meruit* theory even though plaintiffs have already paid or been credited the amounts it owed the management company for the fuel.

At issue on plaintiffs' motion for summary judgment, therefore, is whether the Texas statute operates to create liens where, as here, (i) the aircraft were, with two exceptions, fueled outside of Texas, and (ii) defendant did not provide fuel or services, but merely financed those

-1-

purchases. Also at issue is whether *quantum meruit* recovery is appropriate when a beneficiary has already paid or been credited for the benefits it received. For the reasons stated herein, summary judgment is appropriate as the material facts are not disputed and plaintiffs are entitled to judgment as a matter of law.

I.[1]

Defendant is a Texas corporation that finances aviation fuel purchases through credit cards it offers to aircraft owners and operators. Each plaintiff owns one of the two aircraft involved here: plaintiff Westwind Acquisition Co., LLC ("Westwind"), a Delaware limited liability corporation, owns a Gulfstream G200 aircraft with Federal Aviation Administration ("FAA") registration number N707BC, and plaintiff Monroe, LLC ("Monroe"), also a Delaware limited liability corporation, owns a BAE 125 aircraft with FAA registration number N180EG. During all relevant times, the aircraft were hangared in Dulles, Virginia. The sole members of the respective plaintiff corporations contracted with International Jet Management, Inc. ("IJM"), an aircraft management company, to manage, maintain, and operate the two airplanes. Specifically, the contracts provided that IJM would be responsible for fueling, storing, and servicing the planes and that plaintiffs would reimburse IJM for the expenses incurred in doing so. IJM, in turn, obtained credit cards from defendant and used these cards to finance fuel, storage, and services for plaintiffs' airplanes at airfields across the country and around the world, including two fuelings that occurred at airfields in Texas.

---

[1] The facts contained herein are derived from the record as a whole pursuant to Rule 56, Fed. R. Civ. P., and are not materially disputed by the parties.

-2-

Defendant, as issuer of the credit cards, paid the charges and billed IJM for these amounts. IJM, which by then was insolvent, did not pay its credit card bills. Specifically, defendant claims, and plaintiffs do not dispute, that IJM failed to pay (i) $83,337.13 in credit card charges incurred in the course of fueling and servicing the Westwind airplane and (ii) $169,880.41 in credit card charges incurred in the course of fueling and servicing the Monroe airplane. Those charges were incurred primarily in Virginia, but also in various other states and in other countries. It is worth noting that only two charges, both involving the Monroe airplane, were incurred in Texas. Accordingly, on November 14, 2008, defendant filed with the FAA (i) a lien of $83,337.13 against the Westwind aircraft and (ii) a lien of $169,880.41 against the Monroe aircraft. The documents memorializing the liens state that the liens are asserted "[p]ursuant to Sections 70.301 and 70.303 of the Texas Property Code." Pls.' Ex. D at 1.

Plaintiffs filed the instant civil action on May 15, 2009. They seek a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to the effect that the liens asserted by defendant against their airplanes are invalid. They also request damages for (i) trespass to chattels, (ii) conversion, and (iii) slander of title. On June 22, 2009, defendant answered the complaint and filed a counterclaim, seeking (i) foreclosure on the liens and (ii) recovery on a *quantum meruit* basis. On October 5, 2009, plaintiffs filed a motion for partial summary judgment. They contend that the undisputed facts warrant judgment as a matter of law with respect to (i) their claim for declaratory relief, (ii) defendant's claim for foreclosure of the liens, and (iii) defendant's claim for recovery on a *quantum meruit* basis. Defendant opposed plaintiffs' motion, and oral argument was heard on October 30, 2009. As the matter has been

fully briefed and argued, it is now ripe for disposition.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

### A. Validity of the November 7, 2008 Liens

The Texas aicraft lien statute provides, in pertinent part:

(a) A person who stores, fuels, repairs, or performs maintenance work on an aircraft has a lien on the aircraft for:
    (1) the amount due under a contract for the storage, fuel, repairs, or maintenance work; or
    (2) if no amount is specified by contract, the reasonable and usual compensation for the storage, fuel, repairs, or maintenance work.

Tex. Prop. Code § 70.301. Citing this statute, defendant claims it has liens on both airplanes stemming from the fact that IJM used credit cards issued by defendant to purchase fuel and services for the airplanes and then failed to pay the credit card bill defendant sent IJM. This claim fails, according to plaintiffs, for two reasons. First, plaintiffs argue that the Texas statute, contrary to defendant's claim, has no extraterritorial effect; it cannot operate to create liens based on aircraft fueling and servicing transactions that occur beyond Texas's borders. Second,

plaintiffs argue that even assuming, *arguendo*, that the statute has extraterritorial effect, it would nonetheless not apply here as it operates to create liens only in favor of the person or entity who provided fuel or services for the aircraft. Defendant did neither; it provided no fuel or services for the airplanes. Instead, defendant merely financed the fueling and services transactions at issue. Because the liens are invalid under Texas law, plaintiffs are entitled to summary judgment on both of these counts.

It is axiomatic that "'[n]o state can legislate except with reference to its own jurisdiction.'" *BMW of N. Am., Inc., v. Gore*, 517 U.S. 559, 571 (1996) (quoting *Bonaparte v. Tax Ct.*, 104 U.S. 592, 594 (1881)). Thus, the legislative power of one state is "constrained by the need to respect the interests of other States." *Id.* (citing *Healy v. Beer Institute*, 491 U.S. 324, 335–36 (1989); *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982)). Accordingly, it is ordinarily presumed that state laws are intended to apply only within the state's territorial jurisdiction and not extraterritorially.[2] Importantly, the Supreme Court of Texas has itself noted that a strong presumption exists that Texas statutes do not apply extraterritorially. *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006). Indeed, in the absence of clear legislative intent to the contrary, Texas statutes should be interpreted to apply only within the territorial jurisdiction of the state. *Id.* (quoting *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187

---

[2] *See Am. Jur. Statutes 2d* § 250 ("[U]nless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect . . . . Thus, an extraterritorial effect is not to be given statutes by implication.").

(Tex. 1968)). Nor is there any doubt that this principle applies with equal force where the parties seeking recovery based on a Texas statute are also citizens of Texas. *See id.*

The statute at issue here provides no indication whatever that it applies to conduct that occurs outside of Texas. It merely provides that "[a] person who stores, fuels, repairs, or performs maintenance work on an aircraft has a lien on the aircraft for[] the amount due under a contract for the storage, fuel, repairs, or maintenance work," or, if the amount is not specified by contract, for the "reasonable and usual" amount for such goods or services. Tex. Prop. Code § 70.301(a). Nothing in this language suggests that the statute is intended to apply to contracts for airplane storage, fuel, repairs, or maintenance work that arise under the laws of any state other than Texas. Accordingly, in light of the presumption against extraterritorial effect, it is pellucidly clear that § 70.301 applies only with respect to aircraft fueling or servicing contracts that occur in Texas or arise under the law of Texas.[3]

The record in this case makes clear that all but two of the contracts for airplane storage, fuel, repairs, and maintenance work at issue here arose under the laws of places other than Texas. Indeed, 33.3 percent of the aircraft fueling and servicing transactions with respect to the Westwind airplane arose in the Commonwealth of Virginia, whereas the figure is 58 percent with respect to the Monroe aircraft. Indeed, the parties agree that only two contracts for fueling and servicing the airplanes were made and performed in Texas. Because § 70.301 applies only with

---

[3] Neither presented nor addressed here is whether the pertinent parties may agree to give § 70.301 extraterritorial effect. This might occur where, unlike here, a contract between the aircraft fuel and services provider and the party purchasing these services explicitly provides for the application of § 70.301, notwithstanding that the services were provided outside of Texas.

respect to contracts arising under Texas law, the statute cannot operate to create liens for aircraft fueling and servicing transactions that occur elsewhere. Indeed, enforcing the liens with respect to the non-Texas contracts for storage, fuel, repairs, and maintenance would impermissibly accord extraterritorial effect to § 70.301 in contravention of Texas law and established principles of federalism. Thus, plaintiffs are entitled to summary judgment on Count 1 of the complaint and Count 1 of the counterclaim with respect to all of the transactions that occurred outside of Texas.

Plaintiffs' second argument compels the same result with respect to all of the fueling and servicing transactions, including those that occurred in Texas. By its plain terms, § 70.301 creates a statutory lien only in favor of the "person who stores, fuels, repairs, or performs maintenance work on an aircraft." Tex. Prop. Code § 70.301(a). As this language makes clear, the right of the statutory lien created by § 70.301 belongs to the person or entity with whom the owner or operator of the aircraft contracts for the provision of storage, fuel, repair, or maintenance services. Only if defendant provided such goods or services with respect to plaintiffs' aircraft could it be entitled to a statutory lien pursuant to § 70.301. Yet, defendant clearly did not provide any fuel or services for plaintiffs' airplanes, and, indeed, it is not even in the business of doing so. Instead, defendant is a credit card company. It issued credit cards to IJM, and IJM used those credit cards to purchase various goods and services from third parties. And, as the terms of defendant's credit card contract with IJM make clear, IJM's use of the card to purchase aircraft fuel and services makes defendant neither a provider of those goods and

services nor even a party to those transactions.[4] At most, defendant finances these transactions, and it would stretch § 70.301 far beyond its plain terms to read it to create a statutory lien for the benefit of a company that merely finances these transactions.

Accordingly, § 70.301 does not create any valid liens on plaintiffs' airplanes for defendant's benefit, even with respect to the two fueling transactions that occurred in Texas. Plaintiffs are, therefore, entitled to summary judgment in full with respect to Count 1 of the complaint and Count 1 of the counterclaim.

## B. Defendant's *Quantum Meruit* Counterclaim

Defendant argues that it is entitled to *quantum meruit* recovery on theories of unjust enrichment and equitable subrogation. Neither theory applies here.

Generally speaking, unjust enrichment requires that a party knowingly obtained a benefit under circumstances which render it inequitable for that party to retain such benefit without paying fair value for it. *See Raymond, Colesar, Glaspy & Huss, P.C., v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992). Equitable subrogation allows one who has discharged another's debt to succeed to the rights and position of the satisfied creditor. *See Am. Jur. 2d*

---

[4] The credit card contract terms state that

> all products (including but not limited to fuel) obtained through use of the [credit card] represent sale transactions between [IJM] and the supplier. Title to all products involved passes directly from the supplier to [IJM]. . . . At no time will Universal . . . purchase, house, take title to or hold any other interest in, or place or continue in commerce, or sell, any fuel or other products or services obtained through the use of the [credit card].

Pls.' Mem. in Supp. Ex. 9 at 4.

*Subrogation* § 5. Both doctrines are founded in equity and require inequitable or unjust conduct by the party against whom they are being asserted. *Raymond*, 961 F.2d at 491. The facts of this case do not support either theory's application, as there is no evidence to support the claim that plaintiffs benefitted unjustly or acted inequitably with respect to the conduct underlying this case. Indeed, plaintiffs state, and defendant does not dispute, that plaintiffs paid or were credited for all amounts owed under their contracts with IJM. Thus, far from acting inequitably, plaintiffs have met their obligation to IJM for aircraft fueling and servicing payments. Accordingly, far from being unjustly enriched, plaintiffs paid for what they received. In these circumstances, therefore, allowing *quantum meruit* recovery against plaintiffs here would effectively force them to pay twice for fuel and services for which they have already paid once. Such a result would plainly be unjust and inequitable as to plaintiffs, given that plaintiffs acted neither inequitably nor unjustly. Accordingly, plaintiffs are entitled to summary judgment on Count 2 of defendant's counterclaim.

### C. Plaintiffs' Request for Attorney's Fees

Plaintiffs argue that they are entitled to attorney's fees pursuant to § 70.306 of the Texas Property Code. At first glance, it seems rather audacious to request fees under a statute whose applicability plaintiffs have just successfully attacked. Further examination, however, shows that plaintiffs are indeed entitled to attorney's fees pursuant to the Texas statute. The Declaratory Judgment Act provides that courts may grant "[f]urther necessary or proper relief based on a declatory judgment . . . against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. In diversity cases such as this one brought under the Declaratory

Judgment Act, courts may, in their discretion, award reasonable attorney's fees to the extent that such fees would be allowed under applicable substantive state law. *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998); *Continental Casualty Co. v. Assicurazioni Generali, S.P.A.*, 903 F. Supp. 990, 993 (S.D.W. Va. 1995); *Western World Ins. Co. v. Harford Mut. Ins. Co.*, 602 F. Supp. 36, 37 (D. Md. 1985), *aff'd*, 784 F.2d 558 (4th Cir. 1986).

Texas Property Code § 70.306 states that courts "in a suit brought under this subchapter may award reasonable attorney's fees to the prevailing party." Notably, this statute does not limit the award of fees to cases in which a valid lien was found to exist under § 70.301. Instead, it requires only that the suit be "brought under" the lien law. *See Astraea Aviation Servs., Inc., v. Nations Air Inc.*, 172 F.3d 390, 396 (5th Cir. 1999) (upholding award of fees to aircraft owner-defendant where trial court concluded that plaintiff did not hold a valid lien under § 70.301). It is beyond argument that the instant case was "brought under" § 70.301. Plaintiffs sought invalidation of liens asserted pursuant to § 70.301, and defendant counterclaimed for foreclosure of the lien pursuant to the statute in this case; moreover, the scope of the law was the primary issue for decision here. Moreover, plaintiffs are clearly "prevailing part[ies]" within the meaning of § 70.306. Accordingly, they are entitled to reasonable attorney's fees.[5]

---

[5] Analogies from two other contexts confirm this result. First with respect to whether this suit was "brought under" § 70.301, the Supreme Court has concluded that a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 is a suit "arising under" federal law within the meaning of 28 U.S.C. § 1331 when the declaratory judgment defendant otherwise would have had a traditional coercive right of action that arose under § 1331. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."). Because defendant in this case could have filed a suit "brought under" §

An appropriate Order will issue.

Alexandria, Virginia
November 9, 2009

/s/
T. S. Ellis, III
United States District Judge

---

70.301—indeed, Count 1 of the counterclaim is precisely such an action—it is clear that this action was itself "brought under" § 70.301 within the meaning of § 70.306. Second, the statutory authorization of attorney's fees to a "prevailing party" in a proceeding brought pursuant to 42 U.S.C. § 1983 has been held to allow the award of fees even when no valid claim existed under that statute. 42 U.S.C. § 1988(b); *Hutcherson v. Board of Supervisors of Franklin County, Va.*, 742 F.2d 142, 146 (4th Cir. 1984) (upholding award of fees to defendants in § 1983 suit where plaintiffs' claim failed to state a valid claim for relief). Accordingly, plaintiffs here are prevailing parties within the meaning of § 70.306 because the relief sought and granted is a declaration that defendant has no valid claim pursuant to § 70.306.